IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

ORLANDO CORDIA HALL,
               Petitioner,

v.

T.J. WATSON,
               Respondent.

No.    2:17-CV-00176-JPH-MJD

**NOTICE OF DISPOSITION OF *IN RE HALL* AND GOVERNMENT'S
MOTION TO DISMISS HALL'S 28 U.S.C. § 2241 PETITION**

Respectfully submitted,

Josh J. Minkler
United States Attorney
Southern District of Indiana

*s/ Leigha Simonton*
Leigha Simonton,
Special Assistant United States Attorney
Texas Bar No. 24033193

*s/ Jonathan Bradshaw*
Jonathan Bradshaw
Special Assistant United States Attorney
Colorado Bar No. 43838
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
E-mail: jonathan.bradshaw@usdoj.gov

Attorneys for Respondent

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES..................................................................................iii

NOTICE OF DISPOSITION OF *IN RE HALL* AND GOVERNMENT'S MOTION TO DISMISS HALL'S 28 U.S.C. § 2241 PETITION ....................................................... 1

INTRODUCTION .................................................................................................... 1

BACKGROUND ....................................................................................................... 3

    1.    Based on a horrific set of events, a jury finds Hall guilty of kidnapping resulting in death, carrying a firearm during that crime of violence, and other unchallenged convictions. ..................................................... 3

    2.    The Fifth Circuit rejects Hall's direct appeal, attempt to file a successive Section 2255 motion after *Johnson*, and renewed attempt to do so after *Davis*............................................................................................... 6

    3.    The District of Columbia district court vacates its earlier preliminary injunction, which had barred Hall's execution, and Hall's execution date is set.................................................................................................... 8

LAW GOVERNING SECTION 2241 PETITIONS ........................................... 8

DISCUSSION.......................................................................................................... 11

    1.    Hall's petition must be dismissed because it relies on *Davis*, a constitutional rule................................................................................. 12

    2.    Capital kidnapping resulting in death is a crime of violence. ..................... 16

    3.    In any event, Hall's attack on his death sentence plainly fails.................... 22

CONCLUSION ...................................................................................................... 27

CERTIFICATE OF SERVICE............................................................................. 28

ii

## **TABLE OF AUTHORITIES**

**Federal Cases**                                                                                    **Page(s)**

*Apprendi v. New Jersey*, 530 U.S. 466 ...................................................................... 18

*Beason v. Marske*, 926 F.3d 932 (7th Cir. 2019) ....................................................... 9

*Bourgeois v. Watson*, ___ F.3d ___, 2020 WL 5905326 (7th Cir. Oct. 6, 2020) ............... 8

*Burrage v. United States*, 571 U.S. 204 (2014) ........................................................ 18

*Camacho v. English*, 872 F.3d 811 (7th Cir. 2017) ........................................... 12, 27

*Chazen v. Marske*, 938 F.3d 851 (7th Cir. 2019) ............................................... 9, 17

*Curtis Johnson v. United States*, 559 U.S. 133 (2010) ............................................ 19

*Douglas v. United States*, 858 F.3d 1069 (7th Cir. 2017) ....................................... 20

*Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001) ...................................................... 10

*Greenlaw v. United States*, 554 U.S. 237 (2008) .................................................... 26

*Hall v. United States*, 119 S. Ct. 1767 (1999) ......................................................... 6

*Hall v. United States*, 127 S. Ct. 2029 (2007) ......................................................... 6

*In re Davenport*, 147 F.3d 605 (7th Cir. 1998) ................................................... 9, 14

*In re Fed. BOP Execution Protocol Cases*, No. 19-MC-145 (TSC),
    2020 WL 5604298 (D.D.C. Sept. 20, 2020) ......................................................... 8

*In re Hall*, No. 19-10345, ___ F.3d ___, 2020 WL 6375718 (5th Cir. Oct. 30, 2020)
    ................................................................................................................. passim

*Johnson v. Mississippi*, 486 U.S. 578 (1988) ...................................................... 24, 25

*Johnson v. United States*, 576 U.S. 591 (2015) ........................................................ 1

*Lee v. Watson*, 964 F.3d 663 (7th Cir. 2020) ......................................................... 11

*Mathis v. United States*, 136 S. Ct. 2243 (2016) .................................................... 18

*McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076 (11th Cir. 2017) .. 10

*Prost v. Anderson*, 636 F.3d 578 (10th Cir. 2011) ................................................. 10

**Federal Cases, continued**                                                    **Page(s)**

*Purkey v. United States*, 964 F.3d 603 (7th Cir. 2020) ....................................9, 11, 14, 15

*Reynolds v. Werlich*, No. 19-cv-1223-SMY, 2020 WL 3316071
    (S.D. Ill. June 18, 2020) ...................................................................................... 13

*Trumbo v. Sproul*, No. 19-cv-1239-SMY, 2020 WL 3414619 (S.D. Ill. June 22, 2020).. 13

*United States v. Baez-Martinez*, 950 F.3d 119 (1st Cir. 2020)......................................... 19

*United States v. Barraza*, 576 F.3d 798 (8th Cir. 2009)...................................................20

*United States v. Castleman*, 572 U.S. 157 (2014) ............................................................ 19

*United States v. Davis*, 139 S. Ct. 2319 (2019)......................................................1, 12, 26

*United States v. Hall*, 152 F.3d 381 (5th Cir. 1998).....................................................passim

*United States v. Hall*, 455 F.3d 508 (5th Cir. 2006).....................................................4, 5, 6

*United States v. Jenkins*, 849 F.3d 390 (7th Cir. 2017)...................................................... 18

*United States v. Maxwell*, 823 F.3d 1057 (7th Cir. 2016).................................................20

*United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019) .......................................................26

*United States v. Ross*, 969 F.3d 829 (8th Cir. 2020) ........................................................ 16

*United States v. Tsarnaev*, 968 F.3d 24 (1st Cir. 2020) .......................................20, 21, 24

*United States v. Wheeler*, No. 18-420 (Sup. Ct.), 2018 WL 5017116
    (denied Mar. 18, 2019) ........................................................................................ 11

*Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015)...............................................10, 14, 17

*Wilson v. Warden*, No. 2:20-cv-00121-JPH-MJD, 2020 WL 4904818
    (S.D. Ind. Aug. 19, 2020) .................................................................................... 13

**Federal Statutes and Rules**

18 U.S.C. § 1201(a)............................................................................................................ 18

18 U.S.C. § 3591(a)(2) .......................................................................................................21

28 U.S.C. § 2255(e).............................................................................................................. 9

## **INTRODUCTION**

More than 25 years ago, in a crime that spanned from Texas to Arkansas, Orlando Hall kidnapped, raped, beat with a shovel, and buried alive a 16-year-old girl—a "heinous, cruel, and depraved" series of events. *United States v. Hall*, 152 F.3d 381, 406 (5th Cir. 1998). In the Northern District of Texas, a jury found him guilty of kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a). The jury recommended a death sentence for that offense, which the district court imposed. The jury also found him guilty of other offenses, and the court imposed other sentences for those offenses. Since then, Hall has attacked that judgment in a variety of ways—all of them unsuccessful. Most recently, the Fifth Circuit last Friday rejected his request for authorization to file a successive motion under 28 U.S.C. § 2255. *In re Hall*, No. 19-10345, ___ F.3d ___, 2020 WL 6375718, at *6 (5th Cir. Oct. 30, 2020). The Fifth Circuit also denied as moot Hall's request to stay his execution, which the Bureau of Prisons (BOP) has scheduled for November 19, 2020.

Hall's last in a long line of attacks is this meritless Section 2241 action. Hall improperly tries to invoke the savings clause by relying on rules of constitutional law— first *Johnson v. United States*, 576 U.S. 591 (2015), and now *United States v. Davis*, 139 S. Ct. 2319 (2019)—to overturn his separate conviction under 18 U.S.C. § 924(c). And from there, Hall seeks to invalidate his death sentence, which the district court imposed on a different conviction to which Hall has no challenge. But Hall's petition fails at the

1

outset because Seventh Circuit precedent makes clear that he cannot rely on a new rule of constitutional law to invoke this Court's jurisdiction under the savings clause. That is why this Court has dismissed Section 2241 petitions like Hall's that try to rely on the rule of *Davis*. It should order the same outcome here.

Hall's petition fails for two additional reasons. First, Hall's *Davis* claim fails on its merits because capital kidnapping resulting in death is a crime of violence after *Davis*. The Fifth Circuit just made that clear when, on Friday, it denied Hall's request to raise a *Davis* claim in a successive Section 2255 motion. *In re Hall* is now both the law of the case and of the circuit of conviction, and it is fatal to Hall's *Davis* claim. Second, even if Hall could invoke the rule of *Davis* under the savings clause, and even if his *Davis* claim could succeed with respect to his conviction under Section 924(c), there is simply no merit to Hall's attack on his death sentence, which was imposed for a conviction that he does not challenge. Hall's *Davis* claim has "*nothing* to do with his death sentence," *In re Hall*, 2020 WL 6375718, at *6, and there is no doubt that the jury would have recommended a sentence of death on his Section 1201(a) conviction (Count One) regardless of the validity of the separate Section 924(c) conviction (Count Six). For these reasons, Hall has not set out a meritorious claim for relief, let alone one that shows a "miscarriage of justice" sufficient to warrant relief under the savings clause. This Court should dismiss Hall's Section 2241 petition.

2

## BACKGROUND

**1.  Based on a horrific set of events, a jury finds Hall guilty of kidnapping resulting in death, carrying a firearm during that crime of violence, and other unchallenged convictions.**

Hall and others trafficked marijuana in Pine Bluff, Arkansas using drugs they acquired from various sources in North Texas.   *See Hall*, 152 F.3d at 389.   On September 21, 1994, Hall traveled to Dallas, met two local drug dealers (Neil Rene and Stanfield Vitalis), and paid them $4,700 to acquire marijuana for the trafficking operation.   *Id.*   Things did not go according to plan, and Hall believed that the marijuana salesmen had stolen his money—although Neil Rene and Stanfield Vitalis told Hall they had been robbed before they could get the marijuana.   *Id.*

Three days later, Hall and his coconspirators went to Neil Rene's apartment— armed with handguns, a baseball bat, duct tape, and a jug of gasoline.   *Id.*   Neil Rene's 16-year old sister, Lisa Rene, was the only person there.   *Id.*   The coconspirators demanded entry, and the girl called 911 for help.   *Id.*   After an unsuccessful attempt to kick in the front door, Hall's coconspirators shattered a sliding glass door with a baseball bat, tackled Lisa, and dragged her to a car where Hall and another coconspirator were waiting.   *Id.*   Hall then raped Lisa in the car and forced her to perform oral sex on him, and members of the group drove her to Arkansas.   *Id.*   Once they arrived, Hall's coconspirators tied Lisa to a chair and raped her repeatedly.   *Id.*

3

The next day, Hall and another coconspirator took Lisa into a bathroom to talk. *Id.* They decided Lisa "kn[e]w too much." *Id.* Hall, accompanied by Bruce Webster, dug a grave in a nearby park. *Id.* Hall, Webster, and a third coconspirator took Lisa to the park, but they could not find the makeshift grave in the dark. *Id.* at 389-90. The group drove Lisa back to the motel, switched rooms to avoid detection, and held her captive for one more night. *Id.* at 390.

The following morning, Hall, Webster, and another coconspirator again drove Lisa to the park, where they had dug her grave the day before. *Id.* Hall led Lisa— blindfolded—to her gravesite. *Id.* at 389-90. Hall covered her head with a sheet and hit her in the head with a shovel. *Id.* at 390. Lisa tried to flee, but one of the men tackled her. *Id.* Hall and Webster then took turns hitting her with the shovel, and Webster gagged her, dragged her—stripped naked—into her grave, poured gasoline over her, and buried her. *Id.* Lisa Rene was alive but unconscious when she was buried, and although she may have regained consciousness in the grave before her death, she ultimately succumbed to the combined effects of asphyxia and multiple blunt-force injuries. *United States v. Hall*, 455 F.3d 508, 511 (5th Cir. 2006).

The United States charged Hall with interstate kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count One), conspiracy to commit kidnapping (Count Two), traveling in interstate commerce to promote possession of marijuana with intent to distribute (Count Three), and using or carrying a firearm during and in relation

4

to a crime of violence (Count Six).   *See United States v. Hall*, 4:94-CR-121-Y-2, Dkt.

No. 15 (N.D. Tex. Nov. 22, 1994) (Superseding Indictment) (Gov't Appendix 1-11).

Hall's trial proceeded in two parts—the guilt/innocence phase on all four counts,

followed by the penalty phase on Count One.   *See Hall*, 152 F.3d at 390.

At the guilt phase, the district court—consistent with the government's proposed

charge—instructed the jury as to the elements of Count One:

| | |
|---|---|
| First: | That the defendant, knowingly acting contrary to the law, kidnapped, seized, confined, or inveigled the person described in the indictment, Lisa Rene, as charged; |
| Second: | That the defendant held such person for ransom, reward, or some other benefit that the defendant intended to derive from the kidnapping; |
| Third: | That the defendant intentionally transported such person in interstate commerce while so kidnapped, confided, or inveigled; and |
| Fourth: | That the death of Lisa Rene resulted. |

(CV No. 1-3 at 11.)[1]   On Count Six—the Section 924(c) count—the court instructed the

jury that it must find:

| | |
|---|---|
| First: | That the defendant committed the crime of interstate kidnapping as alleged in Count One of the Indictment; and |
| Second: | That the defendant knowingly used or carried a firearm during and in relation to the defendant's commission of the crime of interstate kidnapping. |

---

[1] "CV No. __" refers to the docket number of this Section 2241 action.   Pin cites refer to the page number listed in the ECF banner printed at the top of the page.

(*Id.* at 17).   The jury found Hall guilty on both of those counts as well two others.   *See*

*Hall*, 152 F.3d at 390.

A separate penalty phase followed for Count One, after which the jury

recommended that Hall be sentenced to death.   *Id.*   The district court sentenced Hall to

death on Count One, a term of life in prison on Count Two, a concurrent 60-month term

on Count Three, and a consecutive 60-month term on Count Six.   *Id.*

**2.      The Fifth Circuit rejects Hall's direct appeal, attempt to file a successive
Section 2255 motion after *Johnson*, and renewed attempt to do so after *Davis*.**

The Fifth Circuit affirmed Hall's judgment in 1998, *see id.* at 389, and the

Supreme Court denied certiorari, *Hall v. United States*, 119 S. Ct. 1767 (1999).   After

the district court denied Hall's first Section 2255 motion, the Fifth Circuit declined to

issue a certificate of appealability in 2006.   *Hall*, 455 F.3d at 510.   The Supreme Court

again denied certiorari.   *Hall v. United States*, 127 S. Ct. 2029 (2007).   In 2016, the

Fifth Circuit denied Hall's request to file a successive Section 2255 motion based on

*Johnson*.   *See In re Hall*, No. 16-10670 (5th Cir. June 20, 2016).

Hall then filed this Section 2241 action.   (CV No. 1.)   He argued that: (1) Section

924(c)'s residual clause was unconstitutional; (2) because that clause was void for

vagueness, this Court must set aside his Section 924(c) conviction; and (3) because his

Section 924(c) conviction was infirm, he was entitled to full resentencing—including a

new penalty proceeding for his unrelated conviction on Count One.   (CV No. 1 at 6-7.)

The United States responded in 2017.  (CV No. 15.)  The government explained there—and reiterates here—that Hall could not bring his claim under Section 2241 because it was premised on a purported constitutional violation, not a change in statutory interpretation that came after his first Section 2255 motion.  (*Id.* at 6-15.)  And the government explained that Hall's claim failed for an independent reason: Hall could identify no miscarriage of justice because the jury's decision to recommend a death sentence was based on his brutal kidnapping, rape, and murder of Lisa Rene, not its earlier finding in a separate proceeding that he had also committed a firearm violation. (*Id.* at 15-17.)

This Court stayed these proceedings pending the Supreme Court's decision in *Davis* because the constitutionality of the residual clause in Section 924(c) was central to Hall's attack on his death sentence.  (CV No. 21.)  After the Supreme Court decided *Davis*, this Court lifted its stay and ordered the parties to brief its impact on Hall's Section 2241 petition.  (CV No. 28.)  Because Hall had filed with the Fifth Circuit another application to raise his constitutional claim in a successive Section 2255 motion, *see In re Hall*, No. 19-10345 (5th Cir.), the government moved to dismiss this Section 2241 petition, (CV No. 31).  This Court instead stayed this case pending the Fifth Circuit's ruling in *In re Hall*.  (CV No. 36.)

On October 30, 2020, the Fifth Circuit denied Hall's application to file a successive Section 2255 motion.  *In re Hall*, 2020 WL 6375718.  The Fifth Circuit held

that Hall could not rely on the constitutional rule of *Davis* because his Section 924(c) conviction was predicated on kidnapping resulting in death, "which plainly satisfies the elements clause of § 924(c)(3)."   *Id.* at *1.

**3.     The District of Columbia district court vacates its earlier preliminary injunction, which had barred Hall's execution, and Hall's execution date is set.**

While Hall was appealing and collaterally attacking his sentence in the Fifth Circuit, he joined litigation in the U.S. District Court for the District of Columbia challenging the then-existing federal lethal-injection protocol.   In 2006, that court entered a preliminary injunction barring Hall's execution (and others).   That preliminary injunction remained in place for the next 14 years but was vacated on September 20, 2020.   *In re Fed. BOP Execution Protocol Cases*, No. 19-MC-145 (TSC), 2020 WL 5604298, at *4 (D.D.C. Sept. 20, 2020).   Thus, Hall became eligible to be scheduled for execution.   On September 30, 2020, the Attorney General announced that the Bureau of Prisons had scheduled Hall's execution to take place on November 19, 2020.

**LAW GOVERNING SECTION 2241 PETITIONS**

In the great majority of cases, a federal prisoner may collaterally attack his final criminal judgment only by motion under Section 2255.   *Bourgeois v. Watson*, ___ F.3d ___, 2020 WL 5905326, at *8 (7th Cir. Oct. 6, 2020).   Although Section 2255 generally limits prisoners to "one shot at relief," there are two exceptions.   *Id.*   First, a prisoner can move to file a second or successive Section 2255 motion if it contains newly

8

discovered evidence proving actual innocence or identifies "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court."  28 U.S.C. § 2255(h).  Second, a prisoner can seek relief under 28 U.S.C. § 2255(e)—the "savings clause."

The savings clause may be invoked only if Section 2255 is "inadequate or ineffective to test the legality of [the prisoner's] detention."  *See Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019).  In deciding whether a prisoner can invoke the savings clause, courts in this Circuit typically follow *In re Davenport*, 147 F.3d 605 (7th Cir. 1998).  *See Chazen*, 938 F.3d at 856; *Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019) ("In considering Beason's appeal, we accept *Davenport* as the law of this circuit, as we must.").  Under *Davenport*, a prisoner may invoke the savings clause if "(1) the claim relies on a statutory interpretation case, not a constitutional case, and thus could not have been invoked by a successive § 2255 motion; (2) the petitioner could not have invoked the decision in his first § 2255 motion and the decision applies retroactively; and (3) the error is grave enough to be deemed a miscarriage of justice."  *Beason*, 926 F.3d at 935.

Although the Seventh Circuit has declined to define "rigid categories delineating when the safety valve is available," it has identified only two other circumstances where a prisoner may resort to the savings clause.  *Purkey v. United States*, 964 F.3d 603, 614-15 (7th Cir. 2020).  Neither is present here.

9

First, in *Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001), the defendant relied on a decision from the Inter-American Commission on Human Rights.   The Seventh Circuit concluded that—because the prisoner relied on a treaty that could not be invoked until after he had exhausted national remedies—his situation was analogous to *Davenport* because "it was literally impossible for him to have raised [his claim] at any time earlier than [] the date of the Commission's decision," and "[t]he argument therefore could not have been raised in his direct appeals or in his first § 2255 motion."   *Id.* at 922-23.

Second, in *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015) (en banc), the defendant (and Hall's coconspirator) obtained new evidence in support of his intellectual-disability claim—evidence that existed at the time of his trial but had been purportedly unavailable to him.   *Id.* at 1132-34.   Because Webster could not satisfy Section 2255(h)'s gatekeeping requirements for a successive motion—he did not rely on new evidence of innocence or a new rule of constitutional law—he filed a Section 2241 petition claiming that he was categorically ineligible for the death penalty based on that new evidence.   *Id.* at 1134-35.   In that "rare case," the en banc court held that there was a "structural problem" or "lacuna" in Section 2255, and therefore Webster could invoke the savings clause.   *Webster*, 784 F.3d at 1135-44.[2]

---

[2] The government believes that the Seventh Circuit's cases applying the saving clause—including *Davenport*, *Garza*, and *Webster*—are incorrectly decided.   The government agrees with the Tenth Circuit's decision in *Prost v. Anderson*, 636 F.3d 578 (10th Cir. 2011) (Gorsuch, J.), the Eleventh Circuit's en banc decision in *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076 (11th Cir. 2017) (en banc), and the dissent in *Webster*, 784 F.3d at 1146-54 (Easterbrook, J., dissenting), which concluded that the saving clause does not permit a defendant

The Seventh Circuit has made clear that "the words 'inadequate or ineffective,' taken in context, must mean something more than unsuccessful." *Purkey*, 964 F.3d at 615. "[A] § 2241 petition may not proceed under the Savings Clause absent 'a compelling showing' that it was 'impossible' to use § 2255 to cure the defect identified in the § 2241 petition." *Lee v. Watson*, 964 F.3d 663, 666 (7th Cir. 2020). "It is not enough that proper use of the statute results in a denial of relief." *Purkey*, 964 F.3d at 615.

## **DISCUSSION**

This Court should dismiss Hall's Section 2241 petition. As an initial matter, his claim fails at the first of the three *Davenport* steps. *Davis* is a new rule of constitutional law, not one of statutory interpretation, so the savings clause is unavailable to Hall. Hall's claim also fails at the third *Davenport* step. Because capital kidnapping resulting in death is a crime of violence after *Davis*, his claim is fundamentally meritless. And, for Hall, even a meritorious *Davis* claim would provide no basis for overturning his death sentence for a conviction that he does not even challenge. He can show no miscarriage of justice that would compel upsetting that sentence. For any or all of these independent reasons, Hall cannot maintain his motion under Section 2241.

---

to challenge his conviction or sentence in a Section 2241 habeas petition. *See* Pet. for Cert., *United States v. Wheeler*, No. 18-420 (Sup. Ct.), 2018 WL 5017116 (denied Mar. 18, 2019). The government recognizes that binding Seventh Circuit precedent forecloses this argument but notes the government's position to preserve the issue for further appellate review if warranted.

11

**1.     Hall's petition must be dismissed because it relies on *Davis*, a constitutional rule.**

Hall cannot invoke the savings clause because his petition relies on a new constitutional rule, not a new statutory decision.   Hall first invoked the rule of *Johnson*, which struck down as unconstitutional the residual clause in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B).   (*See* CV No. 34 at 4 ("Mr. Hall's *Johnson*-based claim is premised on the notion that his § 924(c) conviction cannot be saved from *constitutional* infirmity by resort to the statute's force clause.") (emphasis added).)   Hall now relies on the rule of *Davis*, (*id.* at 6), which both parties here—and all federal courts, including this one—have acknowledged is a rule of *constitutional* law.[3]   *Davis*, 139 S. Ct. at 2336 (holding that "Section 924(c)(3)(B) is unconstitutionally vague"); *In re Hall*, 2020 WL 6375718, at *1.   Indeed, when Hall sought authorization to file a successive Section 2255 motion relying on the constitutional rule of *Davis*, the government conceded in the Fifth Circuit that the rule of *Davis* is exactly the type of constitutional rule that satisfies Section 2255(h)(2).   *In re Hall*, 2020 WL 6375718, at *1, n.1.   Because the rule of *Davis* is both constitutional and the key to Hall's Section 2241 petition, it must be dismissed under the first step of *Davenport*.   *Camacho v. English*, 872 F.3d 811, 815 (7th Cir. 2017).

---

[3] The government has explained in prior submissions why there is no merit to Hall's contention that his claim relies on a rule of statutory interpretation, not constitutional law, so as to satisfy *In re Davenport*.   (*See* CV No. 15 at 8-9.)

12

Numerous district courts have applied *Davenport* to reach that conclusion, dismissing Section 2241 petitions that try to rely on *Johnson* or *Davis*. *See, e.g.*, *Reynolds v. Werlich*, No. 19-cv-1223-SMY, 2020 WL 3316071, at *3-4 (S.D. Ill. June 18, 2020) (dismissing at the first *Davenport* step a Section 2241 petition that attempted to invoke the rule of *Davis* because *Davis* is a "constitutional case[] that could have been raised in a successive § 2255 motion"); *see also Trumbo v. Sproul*, No. 19-cv-1239-SMY, 2020 WL 3414619, at *2 (S.D. Ill. June 22, 2020) ("[A] claim based on *Davis* could be raised in a successive § 2255 motion if permission is timely sought and obtained," but that claim "cannot be pursued in a § 2241 Petition under the 'savings clause.'"). And so has this Court. In *Wilson v. Warden*, No. 2:20-cv-00121-JPH-MJD, 2020 WL 4904818, at *2 (S.D. Ind. Aug. 19, 2020), this Court explained that a claim "for relief based on *Davis* is not cognizable under § 2241 because it does not satisfy the first *Davenport* requirement." This Court's decision in that case was correct under *Davenport*, and it is fatal to Hall's attempt to invoke the savings clause for his *Davis* claim. Dismissal is required here. Full stop.

Even before the Fifth Circuit's October 30 decision, Hall argued that—by declining to authorize him to pursue his proposed *Davis* claim in a successive Section 2255 motion—the Fifth Circuit would create a "structural defect that makes § 2255 ineffective and inadequate." (CV No. 34 at 8.) For that proposition, Hall has relied heavily and repeatedly on *Webster*. (*Id.*; *see also* CV No. 1 at 10-11.) But *Webster*

13

actually confirms that Hall cannot rely on the savings clause to save his *Davis* claim because Section 2255 gave Hall access to a procedure to test that claim.   *See Davenport*, 147 F.3d at 611 (creating an exception for a new statutory claim precisely because Section 2255 is adequate to provide relief in the case of either "newly discovered evidence [of innocence] [or] a new rule of constitutional law").   Webster, the Seventh Circuit concluded, had no such access to a *procedure* under Section 2255.   In *Webster*, several incredibly unique facts, including medical records Webster's attorney purported to have requested from the Social Security Administration prior to the 1996 trial, postconviction counsel's receipt of those records several years after trial, and the records' alleged bearing on Webster's claim that he was intellectually disabled to an extent that would prohibit his execution "had the effect of making section 2255 structurally unavailable."   *Purkey*, 964 F.3d at 615.   On those specific and narrow facts, Webster could show "something more" than an *unsuccessful attempt* to seek relief under Section 2255, *id*.; Webster could show a "lacuna" in the statutory framework that prevented him from ever presenting newly discovered evidence that he was categorically and constitutionally ineligible for the death penalty, *Webster*, 784 F.3d at 1125, 1138.

14

Hall's claim here is nothing like Webster's.   Hall is pressing a garden-variety constitutional claim—that Section 924(c)'s residual clause violates due process because it is void for vagueness.   (CV No. 34 at 6.)   Section 2255(h)(2) was created so that prisoners could seek successive authorization under Section 2255 for such claims, and that section provided Hall with a procedure to press his *Davis* claim.   Hall, of course, availed himself of that procedure in the Fifth Circuit.[4]   *In re Hall*, 2020 WL 6375718, at *1.   And the Fifth Circuit considered his *Davis* claim but held that it lacked even prima facie merit.   *Id.* at *1.   Contrary to Hall's argument, "it is not enough that proper use of the statute results in denial of relief."   *Purkey*, 964 F.3d at 615.   Hall cannot show that it was effectively impossible for him to use Section 2255's procedures to cure a fundamental problem, so this Court should reject his attempt to invoke the savings clause.

---

[4] So did Webster, who likewise sought authorization under Section 2255(h)(2), invoking *Davis* to attack his Section 924(c) conviction.   *In re Webster*, No. 20-10530 (5th Cir. June 2, 2020). The fact that Hall and Webster both filed applications under Section 2255(h)(2) to press their *Davis* claims confirms that Section 2255 provides access to a procedure and so is not structurally inadequate or ineffective.

**2.      Capital kidnapping resulting in death is a crime of violence.**

Hall's habeas petition presupposes that his Section 924(c) conviction depends upon a statutory provision that the Supreme Court invalidated in *Davis*.   As the Fifth Circuit just explained, however, he is wrong.   *In re Hall*, 2020 WL 6375718, at *1. Hall's Section 924(c) was predicated on capital kidnapping resulting in death, which remains a crime of violence after *Davis.*

The Fifth Circuit's decision controls the outcome of Hall's instant *Davis* claim. The law of the Fifth Circuit—where Hall was convicted, sentenced, and filed his direct appeals—is now clear.   Capital kidnapping resulting in death plainly satisfies Section 924(c)(3)'s elements clause, so Hall's crime is a crime of violence notwithstanding *Davis*'s invalidation of Section 924(c)(3)'s residual clause.   *In re Hall*, 2020 WL 6375718, at *1.   In ruling that kidnapping resulting in death plainly satisfies the elements clause of Section 924(c)(3), the Fifth Circuit joined the Eighth Circuit in *United States v. Ross*, 969 F.3d 829, 837-39 (8th Cir. 2020), and therefore the two circuits to address the issue have arrived at the same conclusion.   *In re Hall*, 2020 WL 6375718, at *3-4.

Hall had argued that the statute prohibiting kidnapping resulting in death, 18 U.S.C. § 1201(a), was categorically overbroad because, according to Hall, it encompassed a death resulting from mere negligence, but the Fifth Circuit disagreed.   *Id.* at *4-5.   The Court ruled that "kidnapping resulting in death[] necessarily contemplates the reckless disregard of the risk of serious injury to the victim."   *Id.* at *3.   And Hall

16

was found guilty of *capital* kidnapping resulting in death, so his offense incorporated the intent requirements set out in 18 U.S.C. § 3591(a)(2).  *Id.* at *4.  Thus the Court had "no difficulty" concluding that Hall's conviction for capital kidnapping resulting in death was a crime of violence after *Davis*.  *Id.* at *5.

Critically, *In re Hall* is now the law of the case, dispositive here.  *See Webster*, 784 F.3d at 1135 n.5 (explaining that the Fifth Circuit's rulings on Webster's application to file a successive Section 2255 motion became the "law of the case").  In *Webster*, the Court made clear that the rulings from the Fifth Circuit bound Webster's counsel, commanded respect, and were "unreviewab[le]."  *Id.*  On that point, *Webster* applies with full force here.  The law of Hall's case is that his *Davis* claim is meritless.

Even if not law of the case, *In re Hall* is now the law of the circuit of conviction, which this Court should apply in rejecting Hall's *Davis* claim.  Numerous district courts in this Circuit have explained that they look to the law in the circuit of conviction, not the law of the Seventh Circuit, when ruling on a claim under Section 2241.  *See Chazen*, 938 F.3d at 865 (Barrett, J., concurring) (collecting cases).  Although the Seventh Circuit has not yet adopted or rejected that rule, *see id.* at 860, then-Judge Barrett's concurrence explains why the district courts' decisions "ha[ve] force," *id* at 865.  Applying the law from the circuit of conviction is both consistent with Section 2255 and avoids arbitrary results based on the fortuitous placement of the prisoner by the Bureau of Prisons.  *Id.*  Because *In re Hall* is both the law of the case and the law of the jurisdiction in which

17

Hall was convicted, its conclusion controls.   "Hall's challenge to his § 924(c) conviction therefore fails."   *In re Hall*, 2020 WL 6375718, at *5.

Even if this Court applied the law of the Seventh Circuit, the result should be the same.   The federal kidnapping statute, 18 U.S.C. § 1201(a), requires that the defendant "unlawfully seize[ ], confine[ ], inveigle[ ], decoy[ ], kidnap[ ], abduct[ ], or carr[y] away" a person, and hold that person.   Although kidnapping generally does not qualify as a crime of violence because two of these means, inveigling and decoying, do not require the use of force, *see United States v. Jenkins*, 849 F.3d 390, 394 (7th Cir. 2017), *cert. granted, judgment vacated*, 138 S. Ct. 1980 (2018), *reinstated sub. nom.*, *United States v. Jackson*, 932 F.3d 556, 557 (7th Cir. 2019), the kidnapping statute also contains an aggravated offense applicable where "the death of any person results."   18 U.S.C. § 1201(a).

This aggravated offense carries an enhanced penalty of mandatory life imprisonment or death, is divisible from typical kidnapping, and qualifies as a crime of violence under the elements clause, Section 924(c)(3)(A).   *See Burrage v. United States*, 571 U.S. 204, 210 (2014) ("Because the 'death results' [penalty] enhancement [in 21 U.S.C. § 841(b)] increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt."); *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016) ("If statutory alternatives carry different punishments, then under *Apprendi* [*v. New Jersey*, 530 U.S.

18

466 (2000)], they must be elements."). Hall's jury found him guilty of kidnapping resulting in the death of Lisa Rene and, separately, of carrying a firearm during that crime of violence. (*See* CV No. 1-3 at 17); *In re Hall*, 2020 WL 6375718, at *3.

Capital kidnapping resulting in death requires the use of force. In *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010), the Supreme Court held that the force required for purposes of the elements clause is "force capable of causing physical pain or injury to another person." In *United States v. Castleman*, 572 U.S. 157, 169-70 (2014), the Court further explained: "[T]he knowing or intentional causation of bodily injury necessarily involves the use of physical force. . . . [A] 'bodily injury' must result from 'physical force.'" *Id.*; *see also id*. at 175 (Scalia, J., concurring in part and concurring in the judgment) ("[I]ntentionally or knowingly caus[ing] bodily injury[] categorically involves the use of force capable of causing pain or injury to another person." (citation and marks omitted)).

If bodily injury necessarily entails some force, as *Castleman* says, then death resulting from a kidnapping must necessarily entail violence force. *See United States v. Baez-Martinez*, 950 F.3d 119, 132 (1st Cir. 2020) (holding the same for serious bodily injury, in the context of attempted murder). Per *Castleman*, an offense requiring proof of physical injury—here, death—is an offense that has as an element the use of physical

19

force.[5]   *Douglas v. United States*, 858 F.3d 1069, 1071 (7th Cir. 2017) ("[F]orce

that *actually* causes injury necessarily was capable of causing that injury and thus

satisfies the federal definition." (emphasis in original)).

Viewing only realistic probabilities, the need to prove a causal connection between

the kidnapping and the death requires proof of the intentional or knowing use of force

capable of overcoming resistance or causing bodily injury.[6]   Even if one could imagine a

scenario in which the defendant commits kidnapping without the intentional or knowing

application of force, the additional requirement that the kidnapping result in death

eliminates any realistic possibility that the crime could be committed without the use of

force.   Research reveals no reported cases involving such a scenario; the mere

hypothetical possibility that such case exists does not preclude treating kidnapping

resulting in death as a crime of violence under Section 924(c)(3)(A).   *See United States*

*v. Maxwell*, 823 F.3d 1057, 1062 (7th Cir. 2016) (defendant cannot "rely on fanciful

hypotheticals not applicable in real world contexts (apart from law school exams)" to

show categorical overbreadth).

---

[5] *Cf. United States v. Tsarnaev*, 968 F.3d 24, 104-05 (1st Cir. 2020), *petition for cert. filed* (U.S. Oct. 6, 2020) (No. 20-443) (convictions for conspiracy to use a weapon of mass destruction resulting in death, and conspiracy to bomb a place of public use resulting in death, were predicate crimes of violence because "death results" element required violent force).

[6] *But see United States v. Barraza*, 576 F.3d 798, 807 (8th Cir. 2009) (Section 1201(a) "does not require proof that Barraza voluntarily and intentionally caused the resulting deaths").

20

"This conclusion is further reinforced by the fact that Hall was charged with *the capital crime* of kidnapping resulting in death." *In re Hall*, 2020 WL 6375718, at *4. *But see Tsarnaev*, 968 F.3d at 102 (rejecting the government's argument that the Court could look to the intent requirements set out in the Federal Death Penalty Act).   To return a recommendation of death, the jury necessarily must find beyond a reasonable doubt that the defendant intentionally killed his victim; intentionally inflicted serious bodily injury that resulted in his victim's death; intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person and the victim died as a result of the act; or intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.   18 U.S.C. § 3591(a)(2).   All of those statutory aggravating factors entail intentional conduct that caused a victim's death.   *Capital* kidnaping resulting in death, therefore, categorically has as an element— imported from 18 U.S.C. § 3591(a)(2)—the use, attempted use, or threatened use of physical force against the person or property of another because no defendant can be found guilty of that offense without a finding that he used force capable of causing physical pain or injury against another person.   *In re Hall*, 2020 WL 6375718, at *4.

21

For all of these reasons, Hall's *Davis* claim is meritless, and his Section 2241 petition should be dismissed.

**3.      In any event, Hall's attack on his death sentence plainly fails.**

Even if Hall could use the savings clause to argue that *Davis* upended his Section 924(c) conviction, there is no merit to his further attack on his death sentence, which was imposed for a separate conviction that Hall does not challenge.   Put simply, Hall's eligibility for the death penalty (and the jury's death-penalty recommendation) was in no way dependent on his Section 924(c) conviction, so invalidating his Section 924(c) conviction would have no impact on the validity of his capital sentence for kidnapping resulting in death.   As the Fifth Circuit recently emphasized, Hall's attack on his Section 924(c) conviction "has *nothing* to with [his] death sentence."   *In re Hall*, 2020 WL 6375718, at *6.

The jury made its death-penalty recommendation after Hall's guilt-phase proceedings were completed.   During the penalty phase, the jury was free to consider Hall's use or carrying of a firearm—along with his other heinous conduct, including his raping Lisa Rene and burying her alive—during the brutal kidnapping and murder of Lisa Rene because it had already found that those *facts* were proven beyond a reasonable doubt.   While Hall's *conduct* during the brutal kidnapping was highly relevant in the penalty phase, the fact that Hall had a separate *conviction* under Section 924(c) was not. The sole issue confronting the jury during the penalty phase was whether to recommend

22

the death penalty for kidnapping resulting in death, considering Hall's conduct and relevant aggravating and mitigating circumstances.   In deciding that issue, the jury knew that Hall's conduct in kidnapping and murdering Lisa Rene was egregiously cruel and violent, regardless of whether he was charged and convicted under Section 924(c).

Therefore, this Court should reject Hall's attempt to use his attack on his Section 924(c) conviction to overturn his valid death sentence.   Hall urges that the "unparalleled need for reliability in capital sentencing" means that his death sentence imposed on Count One must "fall" if this Court overturns his conviction on Count Six.   (CV No. 1 at 11.)   But Hall cannot dispute the facts underlying his Section 924(c) conviction, nor does he argue that the evidence about his use of a gun would have been inadmissible at trial but for the existence of the Section 924(c) count.   There is no reason—either in logic or in the record—to speculate that the jury's death-penalty recommendation had anything to do with the mere existence of a separate Section 924(c) count based on those undisputed, and undisputedly relevant, facts.   In fact, the record shows the opposite.   The district court instructed the jury to first consider whether Hall acted with the requisite intent; if so, to next find which statutory aggravating factors the government had proved beyond a reasonable doubt[7]; to find which, if any, non-statutory aggravating factors the

---

[7] The government alleged the following four aggravating factors under the statute: (1) Hall committed the killing after substantial planning and premeditation to cause Lisa Rene's death; (2) Lisa Rene was particularly vulnerable due to her age; (3) Hall caused Lisa Rene's death during the commission of a kidnapping; and (4) Hall committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Lisa Rene.   The jury found the latter two beyond a reasonable doubt.   (*See* Gov't Appendix 42-43.)

23

government had proved beyond a reasonable doubt[8]; and, finally, to balance the aggravating factors against the mitigating factors to determine if Hall should be sentenced to death.   (Gov't Appendix 33-38.)   The district court made clear that the jury was to base its ultimate decision on a balance of those factors.   (*Id.* at 26-27.)

And nothing in *Davis* or the Supreme Court's vagueness jurisprudence undermines those factual findings or supports Hall's novel argument that the mere existence of a Section 924(c) count—which was neither a statutory nor a non-statutory aggravating factor—might somehow have aggravated his sentence on a separate capital count. Because Hall's Section 2241 petition does not challenge—and cannot undo—the jury's finding that he used or carried a gun during the brutal kidnapping and murder of Lisa Rene, invalidating Hall's Section 924(c) conviction on vagueness grounds would have no effect on his death sentence.

Hall's petition relies on *Johnson v. Mississippi*, 486 U.S. 578 (1988), a case that confirms the flaw in his attack on his death sentence.   In that case, the jury found Johnson guilty of murder and recommended the death penalty after it "found three aggravating circumstances, any one of which, as a matter of Mississippi law, would have been sufficient to support a capital sentence."   *Id*. at 580-81.   One of the qualifying aggravators for the death sentence was the fact of a previous conviction in New York for

---

[8] The government alleged two additional aggravating factors—Hall constituted a future danger to the lives and safety of others, and the impact of the crime on Lisa Rene's family.   (Gov't Appendix 44.)

24

felony assault.  *Id.*   Johnson later succeeded in having the New York Court of Appeals reverse the assault conviction, and the Supreme Court—citing the possibility that the invalid conviction played a decisive role as one of the requisite aggravating factors under Mississippi law—remanded the case for further proceedings.  *Id.* at 586, 589.   The Supreme Court explained that the existence of Johnson's prior conviction was an important part of the prosecution's case for the death penalty, and that "the error here extended beyond the mere invalidation of an aggravating circumstance supported by evidence that was otherwise admissible" because "the jury was allowed to consider evidence that has been revealed to be materially inaccurate."  *Id.* at 590 & n.8.

The logic of *Johnson* thus undermines, rather than supports, Hall's efforts to invalidate his death sentence.   Unlike *Johnson*, Hall's Section 924(c) conviction was not an aggravating factor in the jury's consideration of the death penalty, and the evidence supporting that conviction was both accurate and admissible regardless of the legal validity of the charge.   Instead, Hall's qualifying statutory aggravators included findings that Hall (1) caused Lisa Rene's death during the kidnapping, and (2) committed the crime in an especially heinous, cruel, or depraved manner in that it involved Lisa Rene's torture or serious physical abuse—aggravators that are independent of Hall's challenge to his Section 924(c) conviction.   (Gov't Appendix 42-43.)   And Hall cannot point to any portion of the record where the government argued—vigorously or otherwise—for the death penalty because of the existence of a separate Section 924(c) conviction.

25

Hall's citation to the "sentencing package doctrine" fares no better.   (CV No. 1 at 12-13).   Contrary to Hall's suggestion, that doctrine does not require that every aspect of a sentence be vacated simply because one conviction is invalidated.   *See, e.g., United States v. Pratt*, 915 F.3d 266, 275 (4th Cir. 2019).   Instead, plenary resentencing may be appropriate—and agreed to by the government, *see Davis*, 139 S. Ct. at 2336—when the vacatur of a Section 924(c) count has the effect of *reducing* a defendant's overall sentence.   In those circumstances, the theory is that the district court might have imposed a *more severe* sentence if the Section 924(c) conviction had not been in place, and vacatur of the mandatory Section 924(c) sentence therefore may have altered the overall "sentencing package," which takes into account "a breadth of information" to ensure that the "punishment will suit not merely the offense but the individual defendant." *Greenlaw v. United States*, 554 U.S. 237, 253-54 (2008).   Here, consideration of the "sentencing package doctrine" only reflects the quixotic nature of Hall's argument: Hall asks this Court to surmise that if his Section 924(c) sentence is vacated, then his remaining sentence—including the death penalty for kidnapping resulting in death— should be further reduced to reflect his overall culpability.   If anything, the logic of the "sentencing-package doctrine" supports the opposite conclusion.

In sum, Hall's Section 924(c) conviction and its "crime of violence" definition played no role in his separate death-penalty proceeding.   The sole issue confronting the penalty-phase jury was whether to recommend the death penalty based on Hall's conduct

26

and relevant aggravating and mitigating circumstances.   The jury listened to the evidence at trial and sentencing, and it had already found beyond a reasonable doubt that Hall fully participated in the kidnapping and murder of Lisa Rene.   Put simply, the jury was painfully aware that Hall's brutal conduct was egregiously cruel and violent regardless whether he had been charged and convicted under Section 924(c).   Accordingly, even if his Section 924(c) conviction is held to be invalid in light of *Davis*, that holding in no way calls into question his death sentence.   Hall has failed to show the kind of miscarriage of justice that warrants resort to the savings clause.   *See Camacho*, 872 F.3d at 815.

For any or all of the reasons set out above, this Court should decline Hall's request to overturn his death sentence, which is set to be carried out on November 19, more than a quarter century after he was convicted for his atrocious crime.   "It is time—indeed, long past time—for these proceedings to end."   *In re Hall*, 2020 WL 6375718, at *7.

## CONCLUSION

This Court should dismiss Hall's Section 2241 petition.

27

Respectfully submitted,

Josh J. Minkler
United States Attorney
Southern District of Indiana

*s/ Leigha Simonton*_____
Leigha Simonton,
Special Assistant United States Attorney
Texas Bar No. 24033193

*s/ Jonathan Bradshaw*_____
Jonathan Bradshaw
Assistant United States Attorney
Colorado Bar No. 43838
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
jonathan.bradshaw@usdoj.gov

Attorneys for Respondent

## CERTIFICATE OF SERVICE

I certify that on November 1, 2020, this response was filed electronically.   Notice of this filing will be sent to all ECF-registered counsel of record via email generated by the Court's ECF system.

*s/ Jonathan Bradshaw*_____
Jonathan Bradshaw
Special Assistant United States Attorney

28