## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF INDIANA

## TERRE HAUTE DIVISION

|  |  |  |
|---|---|---|
| ORLANDO CORDIA HALL, | ) | Case No. 2:17-cv-00176-JPH-DLP |
| Petitioner, | ) ) ) | **DEATH PENALTY CASE** |
| vs. | ) ) | Execution Scheduled for 11/19/2020 |
| T.J. WATSON, | ) ) ) | |
| Respondent. | ) ) ) ) | |

## RESPONSE TO MOTION TO DISMISS PETITION FOR HABEAS CORPUS AND

## MOTION FOR STAY OF EXECUTION

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND ……………………………………………………………………2

       A.     Conviction, Sentence, and Direct Appeal ................................................... 2

       B.     Initial § 2255 Motion Based on *Johnson* ................................................... 4

       C.     Successive § 2255 Motion Following *Dimaya* ........................................... 4

III.   ARGUMENT............................................................................................................ 6

       A.     Mr. Hall is Entitled to a Stay of Execution ............................................... 6

              1.     There Is a Significant Possibility Mr. Hall's § 2241 Petition Will
                     Succeed. ........................................................................................... 7

              2.     Mr. Hall Will Be Irreparably Harmed Absent a Stay of His
                     Execution. ...................................................................................... 11

              3.     The Government Will Not Be Substantially Injured By a Stay of
                     Execution. ...................................................................................... 11

              4.     The Public Interest Favors a Stay. ............................................... 12

              5.     Substantial Legal Issues Remain Outstanding. ........................... 13

       B.     The Government's Motion to Dismiss is Without Merit and Should Be
              Denied ........................................................................................................ 14

              1.     Mr. Hall's Petition is Cognizable................................................. 14

              2.     "Capital" Kidnapping is Not a Crime of Violence. ..................... 16

              3.     Mr. Hall's Sentence Must be Vacated. ........................................ 18

## TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

*Barefoot v. Estelle*,
    463 U.S. 880 (1983)....................................................................................................6, 13

*Borden v. United States*
    140 S. Ct. 1262 (2020)...........................................................................................8, 13, 14

*Buck v. Davis*,
    137 S. Ct. 759 (2017)......................................................................................................11

*Creek v. Vill. of Westhaven*,
    144 F.3d 441 (7th Cir. 1998) ..........................................................................................10

*In re Fed. BOP Execution Protocol Cases*,
    No. 19-MC-145 (TSC), 2020 WL 5604298 (D.D.C. Sept. 20, 2020) .......................................5

*In re Franklin*,
    950 F.3d 909 (6th Cir. 2020) ...........................................................................................6

*Garza v. Lappin*,
    253 F.3d 918 (7th Cir. 2001) .......................................................................................9, 16

*Gomez v. U.S. Dist. Court*,
    503 U.S. 653 (1992) (per curiam).....................................................................................11

*Hall v. United States*,
    455 F.3d 508 (5th Cir. 2006) ............................................................................................3

*Hall v. United States*,
    526 U.S. 1117 (1999) (cert. denied) ...................................................................................3

*Hall v. United States*,
    No. 4:00-cv-422-Y, 2004 WL 1908242 (N.D. Tex. Aug. 24, 2004) .......................................3

*In re: Hall*,
    ---F.3d---, No. 19-10345, 2020 WL 6375718 (5th Cir. Oct. 30, 2020) .....................5, 8, 14, 18

*In re Hammoud*,
    931 F.3d 1032 (11th Cir. 2019) .........................................................................................6

*Haynes v. United States*,
    873 F.3d 954 (7th Cir. 2017) ...........................................................................................19

*Hill v. McDonough*,
    547 U.S. 573 (2006)......................................................................................................13

*Johnson v. United States*,
    576 U.S. 591 (2015)..................................................................................................4, 8

*Knight v. United States*,
    936 F.3d 495 (6th Cir. 2019) .......................................................................................18

*In re Matthews*,
    934 F.3d 296 (3d Cir. 2019)...........................................................................................6

*In re Mullins*,
    942 F.3d 975 (10th Cir. 2019) .......................................................................................6

*Nken v. Holder*,
    556 U.S. 418 (2009)........................................................................................................6

*Oscorio-Martinez v. Att'y Gen. U.S. of Am.*,
    893 F.3d 153 (3d Cir. 2018).........................................................................................12

*Poe v. Lariva*,
    834 F.3d 770 (7th Cir. 2016) .......................................................................................14

*Purkey v. United States*,
    964 F.3d 603 (7th Cir. 2020) .................................................................................15, 16

*Roane v. Gonzales*,
    No. 05-2337 (RWR), 2006 WL 6925754 (D.D.C., Feb. 27, 2006) ....................................3, 12

*Sessions v. Dimaya*,
    138 S. Ct. 1204 (2018)................................................................................................4, 7

*In re Smith*,
    285 F.3d 6 (D.C. Cir. 2002) ...................................................................................11, 17

*United States v. Barraza*,
    576 F.3d 798 (8th Cir. 2009) .........................................................................................3

*United States v. Binford*,
    108 F.3d 723 (7th Cir. 1997) .......................................................................................18

*United States v. Brazier*,
    933 F.3d 796 (7th Cir. 2019) .................................................................................17, 18

*United States v. Castleman*,
    572 U.S. 157 (2014)......................................................................................................18

*United States v. Davis*,
    139 S. Ct. 2319 (2019)...........................................................................................5, 7, 9

*United States v. Davis*,
903 F.3d 483 (5th Cir. 2018) ...............................................................................................5

*United States v. Gillis*,
938 F.3d 1181 (11th Cir. 2019) .........................................................................................18

*United States v. Hall*,
152 F.3d 381 (5th Cir. 1998) ...............................................................................................3

*United States v. Hayes*,
589 F.2d 811 (5th Cir. 1979) ...............................................................................................3

*United States v. Hodge*,
902 F.3d 420 (4th Cir. 2018) .............................................................................................13

*United States v. Hopper*,
723 F. App'x 645 (10th Cir. 2018) ....................................................................................18

*United States v. Jackson*,
932 F.3d 556 (7th Cir. 2019) ...................................................................................1, 10, 18

*United States v. Jenkins*,
849 F.3d 390 (7th Cir. 2017) ................................................................................1, 9, 16, 17

*United States v. Middleton*,
883 F.3d 485 (4th Cir. 2018) .............................................................................................13

*United States v. Orona*,
923 F.3d 1197 (9th Cir. 2019) ...........................................................................................13

*United States v. Rose*,
896 F.3d 104 (1st. Cir. 2018).............................................................................................13

*United States v. Ross*,
969 F.3d 829 (8th Cir. 2020) .............................................................................................18

*United States v. Schwanke*,
598 F.2d 575 (10th Cir. 1979) .............................................................................................3

*United States v. Walker*,
934 F.3d 375 (4th Cir. 2019) .............................................................................................18

*United States v. White*,
406 F.3d 827 (7th Cir. 2005) .............................................................................................18

*United States v. Wiese*,
896 F.3d 720 (5th Cir. 2018) .........................................................................................6, 10

*Webster v. Daniels*,
   784 F.3d 1123 (7th Cir. 2015) ....................................................................................... *passim*

*Welch v. United States*,
   136 S. Ct. 1257 (2016)...................................................................................................4

**Statutes**

18 U.S.C. § 844.............................................................................................................................3

18 U.S.C. § 924................................................................................................................ *passim*

18 U.S.C. § 1201.............................................................................................................. *passim*

28 U.S.C. § 2241.............................................................................................................. *passim*

28 U.S.C. § 2253.............................................................................................................................6

28 U.S.C. § 2255.............................................................................................................. *passim*

## I.    INTRODUCTION

Mr. Hall's petition under 28 U.S.C. § 2241 rests on two principles.  First, that "kidnapping under 18 U.S.C. § 1201(a) is not a crime of violence as defined in § 924(c)." *United States v. Jenkins*, 849 F.3d 390, 394 (7th Cir. 2017).  And, second, that "a district court's sentencing determination is necessarily holistic . . . so when part of a sentence is vacated, the court is entitled to resentence on all counts." *United States v. Jackson*, 932 F.3d 556, 558 (7th Cir. 2019).[1]  That is all this case is about.  Mr. Hall's § 924(c) conviction depends on his § 1201(a) conviction being a crime of violence.  It's not.  And his death sentence cannot be saved because it is inextricably part of a holistic sentencing package that includes his unlawful § 924(c) conviction.  The § 924(c) conviction cannot be removed without unraveling the rest.  Faithfully applied, these principles entitle Mr. Hall to a stay of execution and, ultimately, vacatur of his 18 U.S.C. § 924(c) conviction and death sentence.

The government's rush to execute Mr. Hall—who was given less notice of his initial execution date, at just 50 days, than any other federal prisoner in the modern era—does not change this calculus or alter the statutory principles underlying his argument.  On the contrary, the equities militate strongly against the government.  In other proceedings, the government consented to an injunction forbidding Mr. Hall's execution and then allowed a decade to pass before taking the action necessary to lift it.  During the government's lengthy delay in that case, the Supreme Court clarified that Mr. Hall's § 924(c) conviction could stand only if, as a

---

[1] Both *Jenkins* and *Jackson* were GVR'ed in light of *Dimaya*. *United States v. Jenkins*, 138 S. Ct. 1980 (2018).  The Seventh Circuit reconsidered *Jenkins* and *Jackson* because, following *Dimaya*, "[s]ome members of the [Supreme] Court were signaling increased discomfort with the use of the categorical approach." *United States v. Jackson*, 932 F.3d 556, 558 (7th Cir. 2019).  But once the Supreme Court decided *Davis* and "vindicate[d]" the Seventh Circuit's earlier opinions, there was "[n]othing remaining to be decided with respect to Jenkins and Jackson." *Id.*  The Seventh Circuit reinstated its judgment, "vacat[ed] and remand[ed] for full resentencing." *Id.*

categorical matter, every conviction for kidnapping necessarily involves the use or threatened use of physical force against the person of another, and that the text of § 1201(a) does not require the use of force to support a conviction. But when Mr. Hall sought leave to file a successive motion pursuant to 28 U.S.C. § 2255 to vindicate his right to vacate the § 924(c) conviction, the government twice successfully urged the Fifth Circuit to bar him from even raising this claim. Now the government urges this Court to again deny Mr. Hall a first opportunity to be heard on the merits of his claim by dismissing his § 2241 petition. To be sure, the rules governing second or successive collateral attacks on federal convictions are burdensome, but Mr. Hall has diligently pressed his § 924(c) claim since it first arose in 2016. At every turn, the government has used all the resources at its disposal—including, lately, scheduling his execution—to prevent even the *consideration* of his claim. It is in precisely these sorts of situations, where a petitioner is hemmed in by (erroneous) procedural rulings elsewhere, that § 2241 relief is available. Mr. Hall respectfully asks this Court to enter a stay and deny the government's motion to dismiss so that the Court may, in due course, play its role as the first court to consider the *merits* of his claim.

## II.    BACKGROUND

### A.    Conviction, Sentence, and Direct Appeal

As relevant here, Mr. Hall was convicted of one count of kidnapping, 18 U.S.C. § 1201(a), and one count of carrying or using a firearm in connection with a crime of violence, 18 U.S.C. § 924(c). Dkt. 1 at 3. The kidnapping count served as the sole predicate for Mr. Hall's § 924(c) conviction. Dkt. 1-3 at 17 (instructing the jury that it could only convict Mr. Hall under § 924(c) if it also convicted him "of interstate kidnapping as alleged in Count One of the Indictment").

2

Congress defined kidnapping as "unlawfully seiz[ing], confin[ing], inveigl[ing], decoy[ing], kidnap[ping], abuct[ing], or carry[ing] away" the victim and, as relevant here, traveling across state lines.  18 U.S.C. § 1201(a)(1).  It made the death penalty available "if the death of *any* person results."  *Id.* § 1201(a)(5) (emphasis added); *see also* Dkt. 1-3 at 21 (instructing the jury that it must find that "the death of Lisa Rene resulted").

On direct appeal, the Fifth Circuit affirmed Mr. Hall's convictions and concluded that the government was not required to prove any mens rea element with respect to the "resulting in death" sentencing qualifier.  *United States v. Hall*, 152 F.3d 381, 416–17 (5th Cir. 1998).  On the contrary, the court concluded, Mr. Hall could properly be convicted of a kidnapping "resulting in death" "regardless of [his] mental state . . . with respect to the death."  *Id.*[2]  Mr. Hall's conviction became final in 1999.  *See Hall v. United States*, 526 U.S. 1117 (1999) (cert. denied).[3]

In 2006, the government consented to entry of an injunction preventing the scheduling or carrying out of several federal death sentences during the pendency of legal challenges to the government's then-existing execution protocol.  *See Roane v. Gonzales*, No. 05-2337 (RWR), 2006 WL 6925754, at *1 (D.D.C., Feb. 27, 2006); *see also* Dkt. 45-5 (Ex. E).  When Mr. Hall moved to intervene in that case and be added to the injunction in 2007, the government did not object.  Dkt. 45-6 (Ex. F).  The government moved on one occasion to lift the injunction.  Dkt.

---

[2] *See also United States v. Hayes*, 589 F.2d 811, 821 (5th Cir. 1979) ("No matter how you slice it, 'if death results' does not mean 'if death was intended.'"); *United States v. Schwanke*, 598 F.2d 575, 579 (10th Cir. 1979) (analogizing "if death results" under 18 U.S.C. Section 844(i) to felony murder); *United States v. Barraza*, 576 F.3d 798, 807 (8th Cir. 2009) ("The statute does not require that the deaths result from voluntary and intentional conduct, only that 'the death of any person results' in the course of the kidnapping.").

[3] Mr. Hall's first motion under 28 U.S.C. § 2255 was denied.  *Hall v. United States*, No. 4:00-cv-422-Y, 2004 WL 1908242 (N.D. Tex. Aug. 24, 2004); *Hall v. United States*, 455 F.3d 508 (5th Cir. 2006) (denying certificate of appealability).

45-7, 45-8 (Exs. G–H).  But when the district court denied that motion it chose not to appeal. *See* Dkt. 45-9 (Ex. I) (entering injunction for Mr. Hall notwithstanding motion).  Ultimately, for more than a decade, the government took no substantive steps toward revising its execution protocol or lifting the stays to which it had consented. It was apparently content to not carry out Mr. Hall's execution for that entire period, without Mr. Hall taking any action to delay or interfere with the government's development of what it believes is a constitutionally satisfactory execution protocol.

> **B.     Initial § 2255 Motion Based on *Johnson***

While the government waited, the law relevant to Mr. Hall's conviction and sentence changed.  In 2015, the Supreme Court decided *Johnson v. United States*, 576 U.S. 591 (2015), which confirmed that the federal Armed Career Criminal Act ("ACCA") was to be analyzed using the "categorical approach" and, under that approach, the ACCA's residual clause was unconstitutionally vague.  A year later, in *Welch v. United States*, 136 S. Ct. 1257 (2016), the Court made *Johnson* retroactively applicable on collateral review.

Following *Welch*, Mr. Hall asked the Fifth Circuit for permission to file a successive § 2255 motion challenging his § 924(c) conviction based on *Johnson* and *Welch*.  *See* Dkt. 1-8. Mr. Hall argued that § 1201(a) could no longer serve as the predicate for his § 924(c) conviction because federal kidnapping was not categorically a crime of violence.  The Fifth Circuit denied permission because it viewed *Johnson* and *Welch* as applying only to the ACCA, and not to § 924(c) "or any similarly worded provision."  Dkt. 1-8 at 2.  Facing a structural barrier to consideration of his claim under § 2255, Mr. Hall initiated this action under § 2241.  *See* Dkt. 1.

> **C.     Successive § 2255 Motion Following *Dimaya***

Then the Supreme Court decided *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).  The Court made clear that *Johnson*'s reasoning was not limited to ACCA convictions.  *Id.* at 1223.  Shortly

thereafter, the Fifth Circuit followed suit and applied *Johnson* to § 924(c). *United States v. Davis*, 903 F.3d 483 (5th Cir. 2018), *aff'd* 139 S. Ct. 2319 (2019).  As a result, Mr. Hall again requested permission to file a successive § 2255 petition from the Fifth Circuit.  The government urged the Fifth Circuit to deny permission, arguing that § 1201(a) is categorically a crime of violence under the elements clause of § 924(c), while simultaneously asking this Court to dismiss Mr. Hall's § 2241 petition because the structural barrier to habeas review via § 2255 had been removed.  *See* Dkt. 31 at 4-6.  This Court denied the government's motion to dismiss, instead staying the case while the Fifth Circuit considered Mr. Hall's application for permission. Dkt. 36.

In 2019, the government announced a new execution protocol. A year later, it moved to lift the injunction that had prevented it from scheduling Mr. Hall's execution, a motion the district court ultimately granted on September 20, 2020.  *See In re Fed. BOP Execution Protocol Cases*, No. 19-MC-145 (TSC), 2020 WL 5604298, at *4 (D.D.C. Sept. 20, 2020).  Eight days later, it moved the Fifth Circuit to expedite its decision on Mr. Hall's request for permission. Two days after that, while active proceedings remained pending in the Fifth Circuit and while this case was stayed, the government scheduled Mr. Hall's execution for November 19.

Just last week, the Fifth Circuit denied Mr. Hall's application for permission to pursue a § 2255 motion raising his § 924(c) claim.  *In re: Hall*, ---F.3d---, No. 19-10345, 2020 WL 6375718 (5th Cir. Oct. 30, 2020).  Over a strong dissent, a majority of the panel concluded that § 1201(a) is categorically a crime of violence because it "necessarily contemplates the reckless disregard of the risk of serious injury to the victim."  *Id.* at *3.  This is "especially" so, the court

5

asserted, when the kidnapping results in any death. *Id.* On that basis,[4] the court refused to allow Mr. Hall to pass through the first of two jurisdictional gates to obtaining review of the merits of his § 2255 claim. *See United States v. Wiese*, 896 F.3d 720, 723 (5th Cir. 2018) (describing the two jurisdictional gates that a successive residual-clause § 2255 movant must satisfy in the Fifth Circuit "to have [his motion] heard on the merits"). In so doing, the Fifth Circuit foreclosed Mr. Hall's access to § 2255 procedures to challenge the validity of his § 924(c) conviction and his sentence. Two days after prevailing in the Fifth Circuit, the government moved to dismiss this case. Dkt. 39.

## III.   ARGUMENT

### A.   Mr. Hall is Entitled to a Stay of Execution

The Court should stay Mr. Hall's execution. The stay factors are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). In capital cases, stays should be used to "give non-frivolous claims of constitutional error the careful attention that they deserve." *Barefoot v. Estelle*, 463 U.S. 880, 888 (1983), *superseded on other grounds by* 28 U.S.C. § 2253(c). In other words, a "death sentence cannot begin to be carried out . . . while substantial

---

[4] The Fifth Circuit also opined, in dicta, that the Supreme Court had not yet determined that its decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), was retroactively applicable on collateral review. *Hall*, 2020 WL 6375718 at *5–6. That argument conflicts with the holdings of four Courts of Appeals, all of which agree that the Supreme Court has made *Davis* retroactive within the meaning of § 2255(h)(2). *See In re Matthews*, 934 F.3d 296, 301 (3d Cir. 2019) (prima facie case for authorization); *In re Franklin*, 950 F.3d 909, 910–11 (6th Cir. 2020); *In re Mullins*, 942 F.3d 975, 977–79 (10th Cir. 2019); *In re Hammoud*, 931 F.3d 1032, 1039 (11th Cir. 2019).

legal issues remain outstanding." *Id.* As described below, all of these factors cut in Mr. Hall's favor.

**1.     There Is a Significant Possibility Mr. Hall's § 2241 Petition Will Succeed.**

Mr. Hall's petition invokes 28 U.S.C. § 2255(e)'s "savings clause," "which permits an application for a writ of habeas corpus under section 2241 by someone who otherwise would be required to use the motion under 2255 and has failed in that effort, if 'it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.'" *Webster v. Daniels*, 784 F.3d 1123, 1135 (7th Cir. 2015) (quoting 28 U.S.C. § 2255(e)). "[W]hether section 2255 is inadequate or ineffective depends on whether it allows the petitioner 'a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence'" and "arguments addressing 'the fundamental legality of a sentence' could be entertained, not just those attacking conviction." *Id.* at 1136.

*First*, there is a significant possibility that Mr. Hall can show "some kind of structural problem with section 2255." *Id.* Mr. Hall has twice sought permission to seek a reliable judicial determination of the fundamental legality of his § 924(c) conviction and death sentence under § 2255. Both times, the Fifth Circuit has turned him away because it determined that § 2255 was not available.

Mr. Hall's first application was refused in 2016 because the Fifth Circuit held that *Johnson*'s logic did not apply to § 924(c). Even though the Fifth Circuit later disavowed that decision and the Supreme Court confirmed it was wrong, the 2016 denial had the effect of running out Mr. Hall's one-year AEDPA clock even though he had taken all necessary steps to vindicate his rights. *See* 28 U.S.C. 2255(f); *Davis*, 903 F.3d at 483; *see also Davis*, 139 S. Ct. at 2319; *Dimaya*, 138 S. Ct. at 1204. Thus, when Mr. Hall returned to the Fifth Circuit, he had to

7

rely upon *Dimaya*, and was later ordered by the court to brief *Davis*.  The Fifth Circuit denied permission again, this time on the theory that kidnapping is always a crime of violence because even kidnapping through "inveigling" or "decoying" involves a reckless disregard of the risk of serious physical injury to the victim.  *Hall*, 2020 WL 6375718 at \*3.  Putting aside the dictionary definitions of "inveigle" and "decoy"—which mean to deceive *without* the use or threat of physical force—Judge Dennis's forceful dissenting opinion makes clear that the Fifth Circuit "concoct[ed] a far more onerous requirement for authorization than the statutorily-mandated prima facie standard and thus *erect*[*ed*] *an unprecedented barrier to authorization*."  *Id.* at \*7 (Dennis, J., dissenting) (emphasis added).  What's more, the Fifth Circuit's whole theory of denial—that "decoying" and "inveigling" necessarily involve a reckless disregard for the *risk* of serious injury—is currently pending before the Supreme Court.[5]  *See Borden v. United States* 140 S. Ct. 1262 (2020) (granting certiorari on the question of whether the "use of force" encompasses crimes with a *mens rea* of mere recklessness).  If the Fifth Circuit is yet again proved wrong in *Borden*, § 2255 may well still be unavailable because, as happened with his *Johnson* application, Mr. Hall's one-year deadline to invoke *Davis* will have expired.

For Mr. Hall, the Fifth Circuit's repeated denials of permission have rendered § 2255 inadequate and ineffective.  As in *Webster*, intervening events—namely the confirmation that § 924(c)'s force clause is analyzed using the categorical approach—call into grave doubt the integrity of Mr. Hall's conviction for using or carrying a firearm in connection with a violent felony.  *See Webster*, 784 F.3d at 1135.  And the door through which Mr. Hall would need to

---

[5] The *reasons* the Fifth Circuit gave for denying permission are not binding on this Court.  *See infra* at 10–11.  A denial of permission is an admission of non-jurisdiction.  And without jurisdiction, there is no law of the case save the determination that review via § 2255 is unavailable.  *See Webster v. Daniels*, 784 F.3d at 1135.

pass in order to obtain review of those arguments has been twice closed by the Fifth Circuit on grounds that are highly doubtful. *See id.*[6] Section 2255 is unavailable and the savings clause must provide an escape valve. *See Webster*, 784 F.3d at 1136. There is a significant possibility that Mr. Hall can show the kind of structural barrier to relief via § 2255 that opens the door to relief via § 2241.

*Second*, there is a significant possibility that Mr. Hall will succeed once the merits of his petition are considered. "[K]idnapping under 18 U.S.C. § 1201(a) is not a crime of violence as defined in § 924(c)." *Jenkins*, 849 F.3d at 394. As § 1201(a) kidnapping is the only predicate supporting Mr. Hall's § 924(c) conviction, that conviction must be vacated. The Seventh Circuit has made clear that the first element of kidnapping—unlawfully seizing, confining, inveigling, decoying, kidnapping, abducting, or carrying away—may be done without the use or threatened use of physical force. *Id.* at 393. And any argument that kidnapping involves "an ever-present risk that the situation will devolve to the point that the perpetrator will need to use force" impermissibly "conflates the Force Clause and the Residual Clause." *Id.* "The Force Clause only defines crimes of violence by the elements of those crimes, not by any inherent risk associated with that crime"; such arguments are "properly analyze[d] . . . only under the Residual Clause." *Id.* The Fifth Circuit's reasoning cannot be squared with the categorical approach that the Supreme Court has explained § 924(c)'s language commands. *Davis*, 139 S. Ct. at 2328,

---

[6] The government would set the bar much higher, suggesting that the mere opportunity to *apply for permission* to file a successive § 2255 means § 2241 becomes unavailable. No authority supports that construction. In *Webster*, the en banc Seventh Circuit agreed that access to § 2241 was available after the Fifth Circuit had denied permission to file a successive § 2255. 784 F.3d at 1135. The question is whether a petitioner has already received access to a procedure that could lead to the *relief* they seek. *Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001). No such procedure is available when permission is denied.

9

2330. Under a straightforward application of the categorical approach, Mr. Hall's § 924(c) conviction cannot stand.

Nor can his sentence. "[A] district court's sentencing determination is necessarily holistic . . . so when part of a sentence is vacated, the court is entitled to resentence on all counts." *Jackson*, 932 F.3d at 558. That is what is required here. The invalidity of Mr. Hall's § 924(c) conviction infects his whole sentence and his death sentence in particular. Mr. Hall's jury was instructed at the guilt phase that it had to find beyond a reasonable doubt that his kidnapping conviction was a crime of violence. Dkt. 1-3 at 17 (conditioning § 924(c) conviction on kidnapping conviction); *id.* at 18 (defining "crime of violence" to include a crime "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"). That instruction was wrong.[7] It was indisputably part of the sentencing package and must now be vacated. Mr. Hall is likely to succeed on the merits of his claims.

Nothing about the law-of-the-case doctrine changes this. It is well established that "observations or commentary touching upon issues not formally before the reviewing court do not constitute binding determinations." *Creek v. Vill. of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998). It is equally well established that denials of permission to file a successive § 2255 motion are jurisdictional determinations in the Fifth Circuit. *See United States v. Wiese*, 896 F.3d 720, 723 (5th Cir. 2018) (describing the two jurisdictional gates that a successive residual-clause § 2255 movant must satisfy in the Fifth Circuit). Indeed, AEDPA confers on the circuit courts only the jurisdiction to determine "whether an application for authorization . . . makes a prima

---

[7] The government conceded that the Supreme Court's decision confirming that § 924(c)'s residual clause is invalid is also retroactively applicable on collateral review. *See* Dkt. 39 at 12.

10

facie showing" with merits questions reserved exclusively to the district court. *In re Smith*, 285 F.3d 6, 7 (D.C. Cir. 2002). Thus, all the Fifth Circuit decided was "that a successive motion under section 2255 was not available." *Webster*, 784 F.3d at 1135. That's the sole "law of the case" established by the Fifth Circuit's refusal to authorize further proceedings on Mr. Hall's claim against his conviction for violating § 924(c). And it has no bearing on Mr. Hall's argument here, except to the extent that it demonstrates a structural defect in § 2255 that entitles Mr. Hall to proceed under § 2241.

### 2. Mr. Hall Will Be Irreparably Harmed Absent a Stay of His Execution.

The threatened irreparable harm to Mr. Hall is plain. Absent a stay, Mr. Hall will be put to death in less than two weeks without having obtained a reliable judicial determination of the fundamental legality of his conviction and sentence.

### 3. The Government Will Not Be Substantially Injured By a Stay of Execution.

A stay will not substantially injure the government. To be sure, the government's new urgency to carry out Mr. Hall's sentence may be temporarily forestalled, but only as long as is necessary to ensure that the government may carry out the sentence lawfully. The government suffers no injury when a stay merely allows a case presenting a substantial issue to proceed to resolution "in the normal course." *Cf. Buck v. Davis*, 137 S. Ct. 759, 774 (2017). And Mr. Hall's petition is not last-minute. *See Gomez v. U.S. Dist. Court*, 503 U.S. 653, 654 (1992) (per curiam) (noting that the "balance of hardships" factor should take into account whether a stay application is last-minute or otherwise manipulative of the habeas process). Mr. Hall filed this § 2241 petition years before the government, in a flurry of activity, sought to lift the longstanding injunction and schedule his imminent execution date with less notice than any other federal death row prisoner has received in the modern era. Indeed, any exigency in these

11

proceedings is entirely of the government's making.  Just as an unjustified delay must cut against a petitioner, a sudden and unexplained fit of urgency must cut against the government.  "[T]he fact that the government has not—until now—sought to" schedule Mr. Hall's execution "undermines any urgency surrounding" its claimed need to do so.  *Oscorio-Martinez v. Att'y Gen. U.S. of Am.*, 893 F.3d 153, 179 (3d Cir. 2018).

Any delay in bringing this motion is not of Mr. Hall's making.  As described above, the government consented to the injunction that for years prevented it from scheduling his execution. *Roane*, 2006 WL 6925754, at *1; *id.* at Dkt. 36, 38.  The government then waited for more than a decade to do anything to promote the resolution of the lawsuit that made the injunction necessary in the first place.  Likewise, the extended proceedings in the Fifth Circuit were not at Mr. Hall's urging.  Mr. Hall never asked for any extension of any deadline for any filing.  That court held Mr. Hall's petition in abeyance while the Supreme Court decided *Davis*.  Once *Davis* came down, the court directed supplemental briefing.  Following that briefing, it appointed amicus and held oral argument on whether *Davis* is retroactively applicable on collateral review.  Mr. Hall, by contrast, has diligently pressed his claim since 2016, including filing this motion pursuant to the Court's order only one week after the Fifth Circuit denied him permission.  Any delay belongs to the government.

### 4.    The Public Interest Favors a Stay.

The public interest favors a stay because any societal reliance on the finality of Mr. Hall's sentence is supplanted by the unlawfulness of his conviction and sentence.  Finality is not an end unto itself.  On the contrary, the public interest strongly disfavors rushing to carry out a death sentence that is interwoven with an invalid underlying conviction.  Moreover, fundamental equities are at stake here, namely the government's decision to schedule Mr. Hall's execution while both this case and the Fifth Circuit case remained pending, as if to put the courts under

acute time pressure to dispose of the case. Courts disfavor parties that fail to diligently press their cause only to demand urgent action as an execution looms. *See generally Hill v. McDonough*, 547 U.S. 573, 584 (2006). That applies to the government as well as to petitioners. The government waited over a decade to take the steps necessary to lift the injunction against executing Mr. Hall. Now, the government wishes unjustifiably to rush these proceedings to meet a deadline that it set. The death penalty should not be meted out in so harried a fashion. The public interest favors a stay.

### 5.      Substantial Legal Issues Remain Outstanding.

A stay is also warranted to allow the substantial legal issues remaining in Mr. Hall's petition to be resolved with appropriate deliberation and care. *See Barefoot*, 463 U.S. at 888. Apart from the strong likelihood that his § 924(c) conviction, and thus his sentence, are unlawful, the Court's resolution of Mr. Hall's petition would also benefit from guidance on whether "recklessness" is a sufficient mens rea to transform an offense into a crime of violence. Indeed, the answer to that question might well influence this Court's analysis on the likelihood of Mr. Hall's success in obtaining ultimate relief.

The Supreme Court this week heard argument on this very question. *See Borden*, 140 S. Ct. 1262. And there is good cause to believe the Court will side with the First[8], Fourth[9], and Ninth[10] Circuits and agree that a mens rea of recklessness is insufficient to satisfy the "use of force" clause under the ACCA or, as here, § 924(c). That is because, as a textual matter,

---

[8] *United States v. Rose*, 896 F.3d 104, 109-10 (1st. Cir. 2018).

[9] *United States v. Hodge*, 902 F.3d 420, 427 (4th Cir. 2018); *United States v. Middleton*, 883 F.3d 485, 497-500 (4th Cir. 2018) (Floyd, J., concurring).

[10] *United States v. Orona*, 923 F.3d 1197, 1202-03 (9th Cir. 2019) (rehearing en banc pending).

defendants cannot *categorically* use or threaten use of physical force "against the person or property of another" by merely being aware of (and proceeding in the face) a risk of harm. *See* 18 U.S.C. § 924(e). If the Supreme Court adopts this view in *Borden*, it would fatally undermine the Fifth Circuit's ruling denying Mr. Hall permission to file a successive § 2255 application. *See Hall*, 2020 WL 6375718 at \*3 ("[T]he act of kidnapping, and especially kidnapping *resulting in death*, necessarily contemplates the reckless disregard of the risk of serious injury to the victim."). Mr. Hall should, at minimum, not be executed before this substantial issue can be resolved and the Court can consider how its resolution bears on Mr. Hall's case. His execution should be stayed.

## B.   The Government's Motion to Dismiss is Without Merit and Should Be Denied

The contentions in the government's motion to dismiss are wrong. Mr. Hall's petition is cognizable, § 1201(a) is not a categorically a crime of violence, and vacatur of the death sentence is required.

### 1.   Mr. Hall's Petition is Cognizable.

The relevant precedents in this circuit are well-settled. In *Webster*, the en banc Seventh Circuit analyzed *Davenport* and its subsequent cases and concluded that the Seventh Circuit had applied different analytic frameworks to different § 2241 petitions. *Webster*, 784 F.3d at 1136. What "[a]ll of these decisions" have in common is that "there must be some kind of structural problem with section 2255 before section 2241 becomes available." *Id.* Indeed, the three-condition test from *Davenport* is simply "[o]ne circumstance under which this court has permitted resort to § 2241." *Poe v. Lariva*, 834 F.3d 770, 772–73 (7th Cir. 2016). *Davenport*'s first prong—prohibition on bringing a constitutional claim under § 2241—will have application in most cases where a petitioner attempts to forum shop by substituting a § 2241 petition for a

14

§ 2255.  But in cases like *Webster* and this one, where the petitioner "otherwise would be required to use the motion under 2255 *and has failed in that effort*," § 2241 becomes available. *Webster*, 784 F.3d at 1135 (emphasis added).  To be sure, the "failure" must not be a loss on the merits, *id.*; it must be a structural problem that precludes § 2255 review.  That is precisely what happened here: Mr. Hall twice attempted to obtain permission from the Fifth Circuit to have the merits of his challenge to his § 924(c) conviction reviewed via § 2255, and was twice turned away on (dubious) jurisdictional grounds.  This § 2241 petition is necessary to vindicate Mr. Hall's rights and cognizable under applicable law.

The government's position would foreclose any § 2241 petition invoking the savings clause and presenting a constitutional claim for relief.  *See* Dkt. 39 at 12 ("Hall cannot invoke the savings clause because his petition relies on a new constitutional rule, not a new statutory decision").  But that sweeping reading of *Davenport* is impossible to square with recent decisions of the Seventh Circuit.  The Court of Appeals, even as it has found resort to § 2241 unavailing for death-sentenced prisoners in a few recent decisions, has not rested its denial of relief on the fact that the petitioner was advancing a constitutional claim.  In *Purkey v. United States*, 964 F.3d 603 (7th Cir. 2020), for example, the petitioner sought to have this Court examine (via § 2241) several constitutional claims he either had previously litigated, or could have previously litigated, in the Western District of Missouri under § 2255.  This Court concluded that the savings clause was unavailable to permit such review, and the Court of Appeals affirmed.  But the Seventh Circuit did not deny relief because Purkey was raising constitutional claims rather than one founded on "a new statutory decision."  Instead, it concluded that Purkey could not obtain review of his IAC claim under § 2241 because "[a]t the time Purkey filed his motion under section 2255, nothing formally prevented him from raising

15

each of the three errors he now seeks to raise in his petition under 2241." *Purkey*, 964 F.3d at 615. In short, there was no need for a "safety valve" for Purkey because Purkey was not foreclosed from obtaining merits review of any of those claims in his § 2255 habeas proceeding—*not* because of the nature of the claims themselves. *See Purkey*, 964 F.3d at 614-15 ("[W]e do not believe that *Davenport*, *Garza*, and *Webster* create rigid categories delineating when the safety valve is available—and such a finding would be inconsistent with the standard-based language of section 2255(e).").

Mr. Hall's point is that here (in contrast to, *e.g.*, *Purkey*), he was completely foreclosed from obtaining a ruling in a § 2255 proceeding on the merits of his challenge to his § 924(c) conviction. Despite Mr. Hall's diligent efforts at every opportunity since his claim arose in light of the Supreme Court's vagueness decisions, the Fifth Circuit completely foreclosed the opportunity for merits review via § 2255 by denying permission and running out the one-year clock in the process. As explained above, the Fifth Circuit's denials render the § 2255 procedure ineffective and have prevented Mr. Hall from receiving a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence. That is precisely the sort of structural defect that the savings clause and § 2241 seek to address. *Webster*, 784 F.3d at 1142. Mr. Hall has never been denied relief on the merits of his § 924(c) challenge. Instead, he was twice altogether denied access to the § 2255 procedure by the Fifth Circuit. As it was for the petitioner in *Webster*, the ordinary mechanism for review of Mr. Hall's § 924(c) conviction was rendered unavailable because authorization was refused. *Id.* at 1134.

### 2. "Capital" Kidnapping is Not a Crime of Violence.

As explained above, "kidnapping under 18 U.S.C. § 1201(a) is not a crime of violence as defined in § 924(c)." *Jenkins*, 849 F.3d at 394. The first element of kidnapping—unlawfully seizing, confining, inveigling, decoying, kidnapping, abducting, or carrying away—can be

16

accomplished without the use or threatened use of physical force. *Id.* at 393. And any argument that kidnapping involves "an ever-present risk that the situation will devolve to the point that the perpetrator will need to use force" impermissibly "conflates the Force Clause and the Residual Clause." *Id.* "The Force Clause only defines crimes of violence by the elements of those crimes, not by any inherent risk associated with that crime"; such arguments are "properly analyze[d] . . . only under the Residual Clause." *Id.* "The categorical method focuses on the essential elements of the counts of conviction, requiring courts in essence to focus on the least culpable conduct that could violate the relevant statutes." *United States v. Brazier*, 933 F.3d 796, 801 (7th Cir. 2019). Faithfully applied, kidnapping under § 1201(a) is not categorically a crime of violence.

The government attempts to avoid this conclusion first by claiming the Fifth Circuit's ruling at the *permission* phase must be treated as the law of the case. While it is true that this Court must "[a]ccept[] . . . the Fifth Circuit's conclusion that a successive motion under section 2255 was not available," it may not disregard the law of *this* circuit. *Webster*, 784 F.3d at 1135. The law of the case extends only as far as the Fifth Circuit's conclusion that the § 2255 procedure was not open to Mr. Hall. *Id.* In coming to that conclusion, the Fifth Circuit decided that there was no jurisdiction to consider the merits of Mr. Hall's claims under § 2255—only the district court could have actually ruled on the merits and the Fifth Circuit never gave it the chance. *Id.* at 1336; *see also Smith*, 285 F.3d at 8. The same was true in *Webster*, where the Fifth Circuit declined to grant authorization to file a successive § 2255 motion, and the Seventh Circuit permitted the petitioner to proceed in this Court under § 2241. *Webster*, 784 F.3d at 1135. The reasons for the Fifth Circuit's finding of non-jurisdiction bear only on the question of its jurisdiction and the jurisdiction of the Northern District of Texas, but § 2241 grants this Court jurisdiction to reach the merits of Mr. Hall's claim. The law of the case presents no impediment.

17

In any event, the government's force-clause argument is wrong. Its position has been rejected by nearly every circuit to consider it, including the Seventh Circuit. *United States v. Walker*, 934 F.3d 375, 378-79 (4th Cir. 2019); *Knight v. United States*, 936 F.3d 495, 497 (6th Cir. 2019); *Brazier*, 933 F.3d at 800-01; *United States v. Hopper*, 723 F. App'x 645, 646 (10th Cir. 2018); *United States v. Gillis*, 938 F.3d 1181, 1204-05 (11th Cir. 2019). The only two opinions adopting their argument came from divided panels over strong dissents. *See Hall*, 2020 WL 6375718; *United States v. Ross*, 969 F.3d 829, 845 (8th Cir. 2020). And neither is binding here. Moreover, the government's assertions about *Castleman* miss the mark. Dkt. 39 at 19. *Castleman* stands for the unremarkable proposition that "*knowing or intentional* causation of bodily injury necessarily involves the use of physical force." *United States v. Castleman*, 572 U.S. 157, 169–70 (2014) (emphasis added). But no mens rea of that degree is present here. On the contrary, Mr. Hall's § 1201(a) conviction was affirmed *because* there was no mens rea associated with the "resulting in death" element. Strict liability cannot stand in for "knowing" or "intentional" causation.

Taken together, the government's arguments about the force clause come to nothing. Offenders can be convicted of kidnapping for merely "inveigling" or "decoying"—that is, deceiving—their victim. That being the case, § 1201(a) kidnapping is not *categorically* a crime of violence, even when it results in death.

### 3. Mr. Hall's Sentence Must be Vacated.

The government's resentencing arguments also fail. All convictions are part of a holistic sentencing package. *Jackson*, 932 F.3d at 558. When one falls, plenary resentencing is necessary. *See United States v. White*, 406 F.3d 827, 832 (7th Cir. 2005); *see also United States v. Binford*, 108 F.3d 723, 729 (7th Cir. 1997) (noting that the "sentencing package concept is just as applicable in the collateral attack context as it is in the direct appeal context"). Indeed, "the

18

norm is to resentence on all counts when any conviction is vacated or needs a new sentence."

*Haynes v. United States*, 873 F.3d 954, 955 (7th Cir. 2017). The need for plenary resentencing is even more acute in this case where Mr. Hall's jury was instructed that it had to find that his kidnapping conviction was a crime of violence. Dkt. 1-3 at 17 (conditioning § 924(c) conviction on kidnapping conviction); *id.* at 18 (defining "crime of violence" to include a crime "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"). Section 924(c) was indisputably part of Mr. Hall's sentencing package, and must now be vacated.

Date:   November 6, 2020

                                        Respectfully submitted,

                                        By: /s/ Robert N. Hochman
                                            Robert N. Hochman
                                            *Counsel for Petitioner.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 6, 2020, copies of this Response and Motion for Stay were filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system.

/s/ Robert Hochman