F

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMES H. ROANE, JR., et al.,    )
                                    )
          **Plaintiffs,**        )
      **v.**                        )        **Case No. 1:05-CV-2337 (RWR)**
                                      )
ALBERTO GONZALES, et al.,    )
          **Defendants.**      )
                                      )

### UNOPPOSED MOTION TO INTERVENE AS PLAINTIFF

Pursuant to Fed.R.Civ.P. 24(a)(2), Orlando Hall ("Mr. Hall"), by and through undersigned counsel, respectfully moves this court for leave to intervene in the above-captioned action as of right. All parties indicate they do not oppose this motion to intervene.

As set forth in the accompanying memorandum, Mr. Hall is a federal inmate under sentence of death, like the three original plaintiffs in this action and like Bruce Webster, who intervened in this case on February 14, 2007. Mr. Hall's motion for intervention is timely. Mr. Hall's request for intervention is being made at an early stage of this action – at the initial stages of discovery. Mr. Hall has exhausted his administrative remedies. Mr. Hall is not making this motion as a last-minute attempt to stay his execution but rather, immediately after the conclusion of his habeas appeal and before any execution date has been set. Furthermore, because Mr. Hall is similarly situated to the other plaintiffs in this action, he has a significant interest in the subject matter of this case. He also is situated so that disposition of this case may impair or impede his ability to protect that interest. There is no certainty his interests will be adequately represented by the existing parties. He therefore satisfies each of the requirements for intervention as of right under Fed.R.Civ.P. 24(a)(2).

In the alternative, Mr. Hall seeks permissive intervention pursuant to Fed.R.Civ.P. 24(b)(2). Permissive intervention is proper because Mr. Hall's claims have questions of law in common with those presented by the existing plaintiffs, and because the present status of the case – which remains in the early phases of discovery – is such that intervention will not unduly delay the case or prejudice the rights of the existing parties.

Upon this Court's granting of leave to intervene, Mr. Hall also moves separately for an Order of this Court preliminarily enjoining defendants from setting of a date for executing him and executing him by lethal injection, which is likely to occur because the Supreme Court recently denied Mr. Hall's petition for certiorari on his habeas corpus appeal. See Attachment 1: Unopposed Motion for Preliminary Injunction, Memorandum of Points and Authorities in Support of Unopposed Motion for Preliminary Injunction, and Proposed Order. The need for such relief is illustrated by the experience of Bruce Webster. Shortly after being denied certiorari by the Supreme Court, on October 6, 2006, while this litigation was pending, Mr. Webster received notice that he would be executed on April 16, 2007. Because the Supreme Court announced its denial of Orlando Hall's petition for certiorari on April 16, 2007, there is a strong likelihood a date for his execution will be set imminently. Counsel for defendants also have represented that they do not oppose the motion for a preliminary injunction.

For all these reasons and as set forth more fully in the accompanying memorandum, Mr. Hall respectfully moves the Court for leave to intervene in this case as a plaintiff. In addition, for the reasons set forth in the separate motion at Attachment 1, Mr. Hall also respectfully moves this Court for a preliminary injunction against the setting of a date for executing him and executing him pending the outcome of this litigation. Pursuant to Local Civil Rule 7(j), Mr. Hall submits a complaint setting forth the claims for which intervention as plaintiff is sought. See

- 2 -

Attachment 2. A summons is not being used because Mr. Hall does not raise additional claims not already raised that would need an answer. A proposed order on this motion to intervene is included with this filing. For the convenience of the court, this proposed order also addresses the application of Anthony Battle for intervention, which is being filed at the same time on the same basis as the application of Hall.

Dated: April 26, 2007

Respectfully submitted,

 s/ Mark J. Hulkower

MARK J. HULKOWER (D.C. Bar No. 400463)
OWEN BONHEIMER (D.C. Bar No. 484984)*
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000

ROBERT C. OWEN
Texas Bar No. 15371950
Owen & Rountree, LLP
P.O. Box 40428
Austin, Texas 78704
(512) 804-2661

MARCIA A. WIDDER
Louisiana Bar No. 23367
636 Baronne St.
New Orleans, LA 70113
(504) 558-9867

Counsel for Plaintiff Orlando Hall

*Pending application for admission to this Court

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JAMES H. ROANE, JR., <u>et al.</u>, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 1:05-CV-2337 (RWR)** |
| | ) | |
| ALBERTO GONZALES, <u>et al.</u>, | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE**

**I.    Introduction**

Orlando Hall ("Mr. Hall") is on death row in the U.S. Penitentiary at Terre Haute.  He has exhausted his judicial appeals of his conviction and sentence and has exhausted his administrative appeals of the legality of the method of his execution.  He is in the same position as the plaintiffs to this action.  Unless he is granted relief through a judicial proceeding or executive clemency, defendants intend to execute him using the protocol for lethal injection ("Lethal Injection Protocol") that is the subject of this challenge.  This motion to intervene as of right, and in the alternative for permissive intervention, is timely because this action has not yet advanced beyond the initial stages of discovery.  In the two months since Bruce Webster intervened, the defendants are only just now completing their initial response to certain information requests and depositions have not yet begun.  In addition, Mr. Hall does not raise claims in addition to those raised by existing plaintiffs.  Mr. Hall's intervention therefore will not pose significant additional discovery burdens.  Compl. of Orlando Hall, Apr. 25, 2007 ("Hall Compl."), ¶¶51-72 (Attachment 2).  Furthermore, Mr. Hall is not joining this action in a last-minute attempt to stay his execution, but instead is moving to intervene promptly upon the

conclusion of his habeas appeal and before his execution date has been set.  See Hill v. McDonough, 547 U.S. ___, 126 S.Ct. 2096, 2104 (2006) (noting that the "last-minute nature of an application" may be grounds for denial of a request to stay an execution) (citing Gomez v. United States Dist. Court for Northern Dist. Of Cal., 503 U.S. 653, 654 (1992) (*per curiam*)).

The parties to this action have represented that they do not oppose this motion.  As his application to intervene is timely, and Mr. Hall meets all of the other requirements for intervention as of right under Federal Rule of Civil Procedure 24(a)(2) and permissive intervention under Rule 24(b)(2), this Court should grant leave to intervene.

## II.    Argument

### A.    Intervention as of Right

Under the Federal Rules of Civil Procedure, Mr. Hall shall be permitted to intervene in this action as of right if (1) he files a "timely application", (2) he "claims an interest relating to the property or transaction which is the subject of the action", (3) he "is so situated that the disposition of the action may as a practical matter impair or impede [his] ability to protect that interest," and (4) the court cannot determine "[his] interest is adequately represented by existing parties."  Fed.R.Cv.P. 24(a)(2).  This is the four-element test for intervention as of right followed in this Circuit.  See Mova Pharmaceutical Corp. v. Shalala, 140 F.3d 1060, 1074 (D.C. Cir. 1998).  Mr. Hall satisfies all four elements for intervention as of right.  His application for intervention is timely, as it comes before any date has been set for his execution and during the initial discovery phase of this case.  He has a compelling interest in the subject matter of this action – a constitutional and statutory challenge to the method of execution that will be used against him.  Disposition of the action without his intervention may impair his ability to protect

- 5 -

that interest.  If this action proceeds without his intervention, he will lack access to discovery or injunctive relief unless he is able to undertake the burdensome and duplicative step of bringing the same claims in a separate action.  A separate action inevitably would lag behind this action and therefore would be significantly influenced if not determined by the outcome of this action.  There is no certainty that his interest will be adequately represented by existing parties, as they cannot grant him access to discovery or ensure he receives the relief accorded to existing plaintiffs.

          1.      Mr. Hall's Motion to Intervene is Timely

Courts reach the other elements of Rule 24(a) if the application to intervene is timely. U.S. v. British Am. Tobacco Australia Servs., Ltd., 437 F.3d 1235, 1239 (D.C. Cir. 2006) (citing Hodgson v. United Mine Workers of Am., 473 F.2d 118, 129 (D.C. Cir. 1972)).  The court held in Hodgson:

> It is settled – particularly when intervention is sought as of right – that the amount of time which has elapsed since the litigation began is not in itself the determinative test of timeliness.  Rather, the court should also look to the related circumstances, including the purpose for which intervention is sought, the necessity for intervention as a means of preserving the applicant's rights, and the improbability of prejudice to those already parties in the case.

Id., 473 F.2d at 129; see also NAACP v. New York, 413 U.S. 345, 366 (1973) (noting that "[t]imeliness is to be determined from all the circumstances").  Taking into account all of the circumstances, the motion of Mr. Hall is timely.  His intervention comes at an appropriate time in this case and an appropriate time in his appeals process.

Intervention by Mr. Hall at this stage of the litigation will not unduly delay or prejudice adjudication of the rights of the original parties.  After the court lifted the stay of this action

following the Supreme Court's adjudication of <u>Hill v. McDonough</u>, 126 U.S. 2096 (2006), defendants did not respond to the amended complaint until November 2006.  Motion to Dismiss (Partial), Nov. 9, 2006; Answer to Amended Complaint, Nov. 9, 2006.  When Bruce Webster intervened on February 14, 2007, the case was in the early phases of discovery, with negotiations over a protective order beginning.  The case remains in the early phases of discovery.  The parties agreed to the terms of a stipulated discovery order only last month.  <u>See</u> Stipulated Discovery Order, entered Mar. 23, 2007.  Defendant's written response is only now being completed.  On information and belief, depositions have yet to begin.  Discovery will continue through June 2007, or later if the discovery period is extended.  Briefing on the merits will not begin until after that.

In addition, as with the intervention of Bruce Webster, the intervention of Mr. Hall would not raise the discovery burden on any party.  His complaint raises the same five claims raised by the existing plaintiffs – violation of the Fifth Amendment, violations of the Eighth Amendment through cruel and unusual punishment and through deliberate indifference to his medical needs, and violations of the Administrative Procedures Act, 5 U.S.C. § 551 *et seq.* ("APA") in adoption of the Protocol and by failing to enforce the U.S. drug control law in his execution process.  <u>See</u> Hall Compl., ¶¶51-72.  Mr. Hall does not raise new or different claims from those brought by the existing plaintiffs.  Consistent with briefing on the claims of existing plaintiffs, Mr. Hall has clarified count IV to confirm that regulations are not challenged and to elaborate the nature of the challenge to the Protocol under the APA.  Defendants thus will not need to file a separate answer to his complaint.  He also does not pursue claims against the defendants in their individual capacities.  The intervention of Mr. Hall therefore will not affect the discovery schedule and will not delay briefing on the merits, which does not begin until at least later in the summer.

- 7 -

Mr. Hall also files this application promptly upon the conclusion of his appeals processes and before any execution date has been set. The Supreme Court has suggested this is an appropriate time for challenging a method of execution. See Hill, 126 S.Ct. at 2104 (criticizing petitions that are "last-minute" and "too late in the day"). Unlike Hill, who met with Supreme Court criticism for bringing his challenge weeks after a date had been set for his execution and just weeks before that date arrived, id. at 2098, Mr. Hall files this application during the week after the conclusion of his habeas appeal and before any execution date has been set. In this respect, Mr. Hall's intervention is even timelier than Webster's, as Webster faced an April 2007 execution date when he sought to intervene in January 2007. See Unopposed Mot. of Bruce Webster to Intervene as Plaintiff, Jan. 29, 2007.

For all of these reasons, the application of Mr. Hall is timely, satisfying the first element for intervention of right. Mr. Hall files this application at a timely stage in this case and promptly after conclusion of his habeas appeals. Granting the application would not raise the discovery burden on the parties and would not affect the discovery schedule.

It is worth noting, furthermore, that permitting Mr. Hall to intervene is unlikely to lead to any significant number of other interventions. As far as Mr. Hall and his counsel are aware, only one other individual – Anthony Battle – is in a similar posture to intervene based on the status of their habeas proceedings. To maximize efficiency, Mr. Hall and Mr. Battle are filing similar motions to intervene at the same time.

2. Mr. Hall Has a Strong Interest in the Subject of the Action

Mr. Hall satisfies the second requirement for intervention as of right because he has a significant legally-protectable interest in the subject of this action. Fed.R.Cv.P. 24(a)(2); see

- 8 -

Cleveland v. NRC, 17 F.3d 1515, 1517 (D.C. Cir. 1994) (plaintiffs who show an interest that is "legally protectable" have the right to intervene under Rule 24(a)(2)); Donaldson v. United States, 400 U.S. 517, 531 (1971) (right to intervene is triggered by an interest that is "significantly protectable"). Unless Mr. Hall is granted judicial relief or obtains clemency, a date will be set for his execution and he will be executed using the Lethal Injection Protocol that is challenged by this action. Just like the existing plaintiffs, including plaintiff-intervenor Bruce Webster, Mr. Hall will suffer irreparable violation of his rights under the Eighth Amendment and the APA if he is executed using the Lethal Injection Protocol and his Fifth Amendment rights will continue to be violated if he is not promptly granted access to adequate information about the Lethal Injection Protocol. The Supreme Court recognized the legal significance of these rights when it permitted a challenge to lethal injection as a method of execution in Hill. 547 U.S. ___, ___, 126 S.Ct. 2096, 2102. Because Mr. Hall faces the same prejudice to his constitutional and statutory rights as the existing plaintiffs, he has a significant and protectable interest in this action. See Mova, 140 F.3d at 1076.

Intervention by Mr. Hall also would promote efficiency, the lynchpin of the interest test under Rule 24(a)(2). In this Circuit, the interest test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Neusse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967). On information and belief, with the exception of Anthony Battle, who also is seeking to intervene, Mr. Hall is the only individual besides the existing plaintiffs who is exposed to the threat of imminent execution using the Lethal Injection Protocol. Permitting Mr. Hall to intervene in these circumstances would not lead to additional interventions, and would not invite additional burdensome discovery or claims into this case. Barring his intervention would be less efficient. If Mr. Hall cannot

- 9 -

intervene in the pending action, then to protect his rights he will be forced to bring his own lawsuit in this Court raising identical claims. Multiplying parallel litigation on the same issues in the same Court would be a far less efficient use of the Court's resources than permitting Hall to intervene in this case.

3. Disposition of the Action May Impede Mr. Hall's Ability to Protect His Constitutional Rights

Mr. Hall satisfies the third element for intervention as of right. Fed.R.Cv.P. 24(a)(2). The test for whether this element is satisfied is not merely whether Mr. Hall will be legally bound by the result of this case, but whether as a practical matter the resolution of this case will significantly affect his interests. The D.C. Circuit has concluded that Rule 24(a)(2)

> now specifies only that the 'disposition of the action may as a practical matter impair or impede his ability to protect' the applicant's interest. This alteration is obviously designed to liberalize the right to intervene in federal actions.

Neusse, 385 F.2d at 701. As a practical matter, disposition of this case may impede Mr. Hall's ability to protect his constitutional and statutory rights.

If Mr. Hall is not permitted to intervene, it is likely that a date for his execution will be set before he could bring his own case. He would be in the disadvantageous position of not having access to discovery until after a date is set for his execution. This temporal disadvantage may impair or impede his ability to protect his rights in a proceeding compressed to accommodate a scheduled execution date. Forcing Mr. Hall to undertake the significant burden of pursuing a separate lethal injection challenge that is substantively the same as the challenge already taking place in this case would further disadvantage him by placing an unnecessarily high litigation burden on him. It would be especially unfair to force him to endure this burden, which would include discovery, when the instant action may very well determine the outcome of

- 10 -

any separate proceeding he may bring in this Court. At a minimum, the instant action likely will determine the shape of any generally-applicable Lethal Injection Protocol found to satisfy applicable law, which would thereafter be used to execute not only the existing plaintiffs, but Mr. Hall as well. For these reasons, it is not only possible but likely that disposition of this proceeding would impede Mr. Hall's ability to protect his constitutional and statutory rights. See Mova, 140 F.3d at 1074, 1076.

> 4. The Interests of Hall May Not be Adequately Represented by the Existing Parties

Mr. Hall satisfies the fourth element for intervention as of right under Rule 24(a)(2). His interests may not be adequately represented by the existing parties. The wording of Rule 24(a)(2) "underscores … the need for a liberal application in favor of permitting intervention." Neusse, 385 F.2d at 702. To satisfy this element, Mr. Hall "need only show that representation of his interest 'may be' inadequate, not that representation will in fact be inadequate." Dimond v. District of Columbia, 792 F.2d 179, 192 (D.C. Cir. 1986) (quoting Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n.10 (1972)). The Supreme Court describes the burden of showing this requirement is met as "minimal". Trbovich, 404 U.S. at 538 n.10. Therefore, "unless it is clear that [the existing plaintiffs] will provide adequate representation for the absentee," intervention of right should be permitted. Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1909 (2d ed. 1986).

Although Mr. Hall does not raise claims in addition to those raised by the existing plaintiffs, Mr. Hall may be in a different position because of the individual facts of his case. For example, as set forth in the Complaint, at Attachment 2, ¶¶ 35, 48(c), different individuals may encounter different difficulties with the Lethal Injection Protocol. Existing plaintiffs to this

- 11 -

action have no standing to serve Mr. Hall's interests in preventing the setting of a date for his execution using the Lethal Injection Protocol and in obtaining adequate information about that method of execution. The relief Mr. Hall seeks is personal to him. In this respect Mr. Hall is no different than Webster before he intervened. Because existing plaintiffs cannot adequately address the individual facts of Mr. Hall's case nor provide Mr. Hall with the relief he seeks, the existing parties cannot adequately represent his interests. Mr. Hall easily satisfies the fourth element for intervention because the risk of inadequate representation of his interests here surpasses the threshold level seen in Mova, which is a mere possibility of inadequate representation. See Mova, 140 F.3d at 1076 (concluding the existing plaintiff "might have strategic reasons" not to press certain arguments available to the putative intervenor).

For all of these reasons, Mr. Hall satisfies all four prongs of the Mova test and his application for intervention as of right should be granted under Rule 24(a)(2). See id.

### B. Permissive Intervention

In the alternative, permissive intervention by Mr. Hall in this case would be proper. Under Fed.R.Cv.P. 24(b)(2), Mr. Hall may be permitted to intervene "[u]pon timely application" provided that his "claim … and the main action have a question of law or fact in common." In applying Rule 24(b)(2), this Circuit follows a three-element test: (1) a timely motion; (2) an independent ground for subject matter jurisdiction; and (3) a claim or defense that has a question of law or fact in common with the main action." E.E.O.C. v. Nat'l Children's Center, 146 F.3d 1042, 1046 (D.C. Cir. 1998). The court has discretion to allow permissive intervention. See Hodgson, 473 F.2d at 126 n.36. In exercising this discretion, courts take into account "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original

- 12 -

parties." Fed.R.Civ.P. 24(b)(2). Mr. Hall meets the standard for permissive intervention. Mr. Hall's application for intervention is timely and his claims and those asserted by the existing plaintiffs share many factual and legal commonalities. His intervention will not delay or prejudice adjudication of the rights of existing parties.

For the same reasons that Mr. Hall's application to intervene as of right is timely, his application for permissive intervention would be timely. As explained in Part II.A.1 of this Memorandum, the application comes at a preliminary phase of this action, while discovery is still beginning, and at the appropriate time in his appeals process – shortly before a date for his execution is expected to be set. Because Mr. Hall raises no additional legal claims, permitting him to intervene would not increase the discovery burden on the parties or delay or prejudice the adjudication of this matter. The first requirement for permissive intervention is satisfied.

Not only does Mr. Hall's challenge have a claim in common with the existing plaintiffs, his challenge has every claim in common with the existing plaintiffs. Hall's Complaint raises claims under the Fifth Amendment, the Eighth Amendment (cruel and unusual punishment and deliberate indifference), and the APA (in adoption of the Protocol and failure to enforce the Controlled Substances Act). Compare Hall Compl. at ¶¶51-72 with Am. Compl. at ¶¶56-77 and Webster Compl. at ¶¶50-70. With the possible exception of the Controlled Substances Act claim, the Government has conceded the court's subject matter jurisdiction over these claims. See Def's Mot. to Dismiss, Nov. 9, 2006, at 4.

Permissive intervention also is appropriate because intervention is the most efficient way for Hall to vindicate his Fifth Amendment right to access to information about the Lethal Injection Protocol. See E.E.O.C., 146 F.3d at 1046 (permissive intervention can be a proper

- 13 -

means for "seeking access to materials that have been shielded from public view either by seal or by a protective order.").

For these reasons, the requirements for permissive intervention also are met.

## III. Conclusion

For the above-stated reasons, Orlando Hall moves this Court for leave to intervene as plaintiff as of right pursuant to Fed.R.Civ.P. 24(a)(2). In the alternative, Hall respectfully moves this Court to grant him permission to intervene under Fed.R.Civ.P. 24(b)(2).

Dated: April 26, 2007

Respectfully submitted,

 s/ Mark J. Hulkower

MARK J.  HULKOWER (D.C. Bar No. 400463)
OWEN BONHEIMER (D.C. Bar No. 484984)*
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
(202) 429-3000

ROBERT C. OWEN
Texas Bar No. 15371950
Owen & Rountree, LLP
P.O. Box 40428
Austin, Texas  78704
(512) 804-2661

MARCIA A. WIDDER
Louisiana Bar No. 23367
636 Baronne St.
New Orleans, LA  70113
(504) 558-9867

Counsel for Plaintiff Orlando Hall

*Pending application for admission to this Court

- 14 -

# Attachment 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAMES H. ROANE, JR., <u>et al.</u>,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| **v.** ) | **Case No. 1:05-CV-2337 (RWR)** |
| ) | |
| **ALBERTO GONZALES, <u>et al.</u>,** ) | |
| **Defendants.** ) | |
| ) | |

## PLAINTIFF'S UNOPPOSED MOTION FOR A PRELIMINARY INJUNCTION BARRING DEFENDANTS FROM SETTING AN EXECUTION DATE FOR PLAINTIFF AND FROM EXECUTING HIM

Plaintiff Orlando Hall ("Mr. Hall"), a federal prisoner under sentence of death, respectfully moves that this Court enjoin defendants from setting an execution date for Mr. Hall and from executing him until the Court has reviewed the legality of the lethal injection method that the Government intends to use to carry out his execution (the "Lethal Injection Protocol" or the "Protocol"). The Lethal Injection Protocol violates the U.S. Constitution and other statutory provisions including but not limited to the Fifth and Eighth Amendments of the U.S. Constitution and the Administrative Procedures Act, 5 U.S.C. §§ 551 *et seq.* The grounds for this Motion are set forth in detail in the accompanying Memorandum of Points and Authorities. Counsel for Mr. Hall has conferred with counsel to all parties to this action, who have represented that they do not oppose this Motion.

Dated:  April 26, 2007

Respectfully submitted,

 s/ Mark J. Hulkower

MARK J.  HULKOWER (D.C. Bar No. 400463)
OWEN BONHEIMER (D.C. Bar No. 484984)*
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
(202) 429-3000

ROBERT C. OWEN
Texas Bar No. 15371950
Owen & Rountree, LLP
P.O. Box 40428
Austin, Texas  78704
(512) 804-2661

MARCIA A. WIDDER
Louisiana Bar No. 23367
636 Baronne St.
New Orleans, LA  70113
(504) 558-9867

Counsel for Plaintiff Orlando Hall

*Pending application for admission to this Court

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JAMES H. ROANE, JR., <u>et al.</u>,          )
                                             )
          **Plaintiffs,**                    )
     v.                                      )          **Case No. 1:05-CV-2337 (RWR)**
                                             )
ALBERTO GONZALES, <u>et al.</u>,             )
          **Defendants.**                    )
                                             )

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION**
**FOR A PRELIMINARY INJUNCTION BARRING DEFENDANTS FROM**
<u>SETTING AN EXECUTION DATE FOR PLAINTIFF AND FROM EXECUTING HIM</u>

The lethal injection protocol employed by the defendants for executing federal prisoners (the "Lethal Injection Protocol" of the "Protocol") violates the U.S. Constitution and other statutory provisions including but not limited to the Fifth and Eighth Amendments of the U.S. Constitution, and the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* Plaintiff Orlando Hall ("Mr. Hall"), a federal prisoner under sentence of death, requests that this Court enjoin defendants Alberto Gonzales, U.S. Attorney General; Harley G. Lappin, Director of the Federal Bureau of Prisons; Newton E. Kendig II, M.D., Medical Director of the Federal Bureau of Prisons; Richard Veach, Warden at the U.S. Penitentiary Terre Haute; Thomas Webster, M.D., Clinical Director, U.S. Penitentiary Terre Haute; Karen Tandy, Administrator of the Drug Enforcement Agency; and John Doe I-X (collectively "Defendants") from setting a date for executing him and from executing him until the Court has completed its review of Defendants' Lethal Injection Protocol to determine its legality and constitutionality. Counsel for Mr. Hall has conferred with counsel for the defendants, who has represented that they do not oppose this motion for a preliminary injunction.

- 1 -

## I.    INTRODUCTION

Mr. Hall has exhausted his final avenue for appeal of the conviction and death sentence imposed upon him by the United States District Court for the Northern District of Texas in 1995. On April 16, 2007, the U.S. Supreme Court announced that it had denied his petition for review of his habeas corpus appeal. As it did in the case of Bruce Webster, the Government is now expected to schedule the execution of Mr. Hall by lethal injection for a date within months if not weeks or even days. Under practices developed by the federal government, a sentence of death by lethal injection is carried out pursuant to the federal Lethal Injection Protocol. This Protocol calls for non-medical personnel of the Federal Bureau of Prisons ("BoP") to inject Mr. Hall with a combination of three dangerous drugs – a super-clinical dose of a sedative intended to render him unconscious, followed by two deadly drugs: one that paralyzes and effectively suffocates the prisoner while the other stops the heart, inducing fatal cardiac arrest. See Compl. of Orlando Hall ("Hall Compl."), ¶22. The Lethal Injection Protocol fails to provide for qualified medical personnel to administer the super-clinical dose of anesthesia prior to administration of the two excruciatingly painful drugs, and does not provide for use of medical equipment to monitor the effectiveness of that anesthesia or medical personnel qualified to operate that equipment. See Hall Compl. at ¶47. The Lethal Injection Protocol also unnecessarily provides for administration of pancuronium bromide, which paralyzes the muscular system, serving the purely aesthetic purpose of casting a "chemical veil" over the plaintiff to disguise the body's reaction to lethal injection including pain and suffering experienced in the absence of properly-administered anesthesia. Inclusion of pancuronium bromide in the Protocol poses an additional threat of unnecessary pain because it causes asphyxiation. Because of these and other defects set forth in the Complaint, the Protocol unnecessarily risks inflicting upon Mr. Hall the conscious experience

- 2 -

of a horrifying and tortuous death, as the drugs cause his diaphragm to freeze, resulting in the painful sensation of asphyxiation, and induce a massive cardiac arrest. Evidence from recent executions by lethal injection demonstrates this threat is real. See Hall Compl. at ¶¶42-43, citing Am. Compl., ¶¶45-46 (discussing harms inflicted upon inmates in recent executions by lethal injection); Webster Compl., ¶¶41-42 (same). The Protocol is a cruel, unusual, and degrading way for non-medical personnel to kill Mr. Hall that violates his constitutional and statutory rights. See Hall Compl. at ¶¶51-72. Due to orders of this Court, the Government is enjoined from executing the existing plaintiffs, who do not have execution dates. See Order Granting Motion to Stay and Granting Motion for Preliminary Injunction, Feb. 24, 2006; Order Granting Motion of Bruce Webster for Preliminary Injunction, Feb. 21, 2007. Mr. Hall seeks relief that will place him in the same position. He moves the Court for a preliminary injunction barring defendants from setting an execution date for him and from executing him pending the outcome of this litigation.

## II. ARGUMENT

In this Circuit, federal courts weigh four factors to determine when injunctive relief is appropriate. Under Wagner v. Taylor, 836 F.2d 566, 575 (D.C. Cir. 1987), courts consider (1) the potential for irreparable harm to the plaintiff if preliminary injunctive relief is not granted, (2) the potential for substantial harm to defendants if this temporary relief is granted, (3) the public interest, and (4) the likelihood of success on the merits in the underlying action. Courts balance these factors and may grant an injunction even if Mr. Hall does not have an equally strong showing on all four factors. Role Models America, Inc. v. White, 193 F.Supp. 2d 76, 80 (D.D.C. 2002), rev'd on other grounds, 317 F.3d 327 (D.C. Cir. 2003). For example, if the plaintiff makes a strong showing on the first three factors, then for the fourth factor it is only necessary to

- 3 -

show a "substantial case on the merits", rather than a "probability of success on the merits." Id. (quoting WMATC v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)). The first factor is the most significant. Irreparable injury is the touchstone of preliminary injunctive relief. See USA Recycling, Inc. v Town of Babylon, 66 F.3d 1272, 1295 (2d Cir. 1995).

For the reasons discussed fully below, each of the four factors weighs in favor of preliminarily enjoining the Government from setting an execution date for Mr. Hall and from executing him. The risk of irreparable injury to Mr. Hall is especially grave because the Lethal Injection Protocol fails to provide the most basic assurances against violation of his constitutional right to be free from unnecessary pain and suffering in his execution. In addition, just as no harm has resulted from the injunction of the executions of the existing plaintiffs, no harm to defendants will result from granting the preliminary injunctive relief Mr. Hall seeks, much less harm that outweighs the threat of irreparable injury to him. Further, the public interest will be served by granting the preliminary injunction because it would ensure protection of his constitutional rights, ensure the uniform application of justice, and ensure compliance with U.S. international obligations. Finally, there is a likelihood of success of this action on the merits, just as similar challenges to state protocols around the country have succeeded.

A.      Mr. Hall Faces Irreparable Injury

The threat of irreparable injury is the most important factor, USA Recycling, Inc., 66 F.3d at 1294, and overwhelmingly favors granting the preliminary injunction Mr. Hall seeks. See Wagner, 836 F.2d at 575. If Mr. Hall does not receive preliminary injunctive relief, it is likely that he will be executed using the Lethal Injection Protocol. There is a serious risk that the Lethal Injection Protocol will leave him conscious while he suffocates and dies of cardiac arrest.

- 4 -

Such an excruciatingly painful death is foreseeable because of the defects in the Lethal Injection Protocol. The Protocol does not provide for administration of anesthesia by a qualified medical professional in an appropriate manner using monitoring equipment administered by trained medical personnel. The Protocol fails to provide reasonable assurance that a secure intravenous delivery method will be achieved, that a proper dose of anesthesia will be administered, and that sufficient anesthetic depth is achieved and maintained while two deadly drugs are injected into his person. Due to those defects among others, he will be in serious danger of actually feeling his own asphyxiation and cardiac arrest, in violation of his rights under the Eighth Amendment. Hall Compl., ¶¶ 56-63. Because he will die as his Eighth Amendment rights are violated in this manner, this is the gravest form of irreparable injury.

### B. Defendants Will Not Suffer Substantial Harm

The Court must balance the irreparable harm to the plaintiff against any substantial harm to the defendants. See Wagner, 836 F.2d at 575. If this Court grants preliminary injunctive relief, the defendants will not suffer harm, much less substantial harm that could outweigh the irreparable injury to Mr. Hall. Defendants already are enjoined from using the Lethal Injection Protocol to execute existing plaintiffs to this action, including Bruce Webster. See Order Granting Motion to Stay and Granting Motion for Preliminary Injunction, Feb. 20, 2006; Order Granting Motion of Bruce Webster for Preliminary Injunction, Feb. 21, 2007. There is nothing unique about the circumstances of Mr. Hall that would make enjoining his execution substantially harmful to defendants. Mr. Hall has been a death row inmate for more than a decade and has been a model inmate throughout his incarceration. A brief delay in his execution will not harm the defendants either. The defendants' consent to this motion confirms that the Court can grant the preliminary injunctive relief Mr. Hall seeks without harming the defendants.

- 5 -

C.     Injunctive Relief Would Serve the Public Interest

The third factor – public interest – also weighs in favor of granting injunctive relief. See Wagner, 836 F.2d at 575. Granting injunctive relief to Mr. Hall serves the public interest by protecting constitutional rights. Injunctive relief for Mr. Hall also would ensure uniformity in the application of justice, both between federal prisoners sentenced to death and between the prisoners on death row at the federal and state levels. In addition, injunctive relief would further the interest of ensuring U.S. compliance with its international obligations.

The U.S. criminal justice system is founded upon a system of constitutional guarantees, including the right to due process of law and the right to be free from cruel and unusual punishment. Protection of these rights for one person is the protection for all. Cf. Planned Parenthood Ass'n of Cincinatti, Inc. v. City of Cincinatti, 822 F.2d 1390, 1400 (6th Cir. 1987) (public interest served by preliminary injunction because "the public is certainly interested in the prevention of enforcement of ordinancyes which may be unconstitutional"). Permitting a violation of these constitutional rights goes against the public interest. Absent an injunction, defendants will violate Mr. Hall's Eighth Amendment and Fifth Amendment rights, casting grave doubt upon the legitimacy and moral authority of the federal capital punishment system. Because of the strong public interest in protecting the constitutional rights of all citizens and in preventing conduct that reduces the legitimacy and moral authority of the federal capital punishment system, the third factor favors injunctive relief.

The public interest in uniform application of justice also would be served by the preliminary injunction Mr. Hall seeks. See Schriro v. Summerlin, 542 U.S. 348, 363 (2004) (Breyer, J., Stevens, J., Souter, J., and Ginsburg., J., dissenting) (concluding that the "law's

- 6 -

commitment to uniformity" is not served when one inmate is executed while another is granted relief, when the constitutional rights of both have been violated), citing Mackey v. United States, 401 U.S. 667, 689 (1971) (Harlan, J., concurring) (recognizing the interest in uniformity of ultimate treatment among similarly-situated federal and state prisoners raising constitutional challenges). If defendants are not enjoined from setting a date for executing Mr. Hall using the Lethal Injection Protocol, then they will be free to execute him using the same unconstitutional method of execution they are barred from using against the other federal death row inmates already in this litigation.

It also would be unfair to deny preliminary injunctive relief to Mr. Hall when a growing number of states have enjoined lethal injections in the United States because these executions violate constitutional rights. See Memo. in Suppt. of Mot. of Bruce Webster for Prelim. Inj., Feb. 14, 2007, at pp. 5-9 (discussing recent federal and state court injunctions granted on constitutional and administrative law grounds, Evans v. Maryland, 914 A.2d 25, 139-50 (Md. Ct. App. Dec. 19, 2006) and Morales v. Tilton, Crim. No. 06-0219 (N.D. Ca. Dec. 15, 2006)). Since then, this trend continues to take hold. After a federal court in Ohio recently enjoined that State from executing another condemned inmate by lethal injection, Cooey v. Taft, Civ. No. 04-1156 (S.D. Oh. Dec. 21, 2006), the U.S. Court of Appeals for the Sixth Circuit denied the request of Ohio to vacate that injunction. Cooey v. Strickland, Ap. No. 06-4660 (6th Cir.) (Order of Mar. 20, 2007). Similarly, an October 2006 order holding the Missouri lethal injection protocol unconstitutional in Taylor v. Crawford, Civ. No. 05-4173 (W.D. Mo.) also remains in force, pending appeal to the U.S. Court of Appeals for the Eighth Circuit. See also Henry Weinstein, *N.C. is 11th State to Halt Lethal Injections*, L.A. Times (Jan. 26, 2007) (describing recent decision by state judge in North Carolina that the absence of doctor participation renders the

state's lethal injection protocol unlawful). Meanwhile, executives at the state level also are taking notice and voluntarily suspending executions by lethal injection until a constitutionally acceptable method can be identified. Last month, based in part on testimony by defendant Lappin, a Commission appointed by the Governor of Florida concluded that the State of Florida had executed a U.S. citizen using a lethal injection protocol that had gross inadequacies in its design and administration, leading directly to a protracted and extremely painful execution. See Report of Governor's Commission on Lethal Injection, Mar. 1, 2007, at pp. 8-9 (findings).[1] Lethal injections in Florida apparently remain halted by the Governor. The Governor of Tennessee similarly halted executions pending review of its lethal injection protocol, while the Governor of North Carolina is treating recent court decisions in that state as imposing an effective moratorium on lethal injection executions there. See Elizabeth Weil, *The Needle and the Damage Done*, N.Y. Times, Feb. 11, 2007.

Many other state and federal prisoners on death row already are protected against the use of lethal injection protocols to execute them. Permitting defendants to set an execution date for Mr. Hall and executing him using the Lethal Injection Protocol would promote disparate treatment of condemned inmates. Some inmates such as the existing plaintiffs in this case would be free from the constitutional harms posed by lethal injection protocols, while others such as Mr. Hall would unfairly be subject to such harms. The public interest weighs against such disparate treatment and in favor of preliminary injunctive relief.

---

[1] This report is posted on the Internet at http://ohiodeathpenaltyinfo.typepad.com/ohio_death_penalty_inform/files/scommissiononadministrationoflethalinjectionfinalreport.pdf.

As outlined in Mr. Hall's Complaint at Attachment 2, international obligations incumbent on the United States also compel the need for careful study of the Lethal Injection Protocol before it is used again to execute anyone, including Mr. Hall. The U.N. Committee charged with monitoring U.S. compliance with the obligation to prevent cruel and degrading treatment has expressed serious concerns to the United States, noting the need for serious study of this matter. See Hall Compl., ¶ 49. Despite this exhortation, to date, there has been no known study of the efficacy of the Lethal Injection Protocol at preventing unnecessary, unconstitutional pain. There is a strong public interest in ensuring U.S. actions in carrying out the statutory death sentence imposed on Mr. Hall comply with the international rule of law. This interest is particularly strong because the principal international agreement at issue is the U.N. Convention Against Torture, to which 144 nations are party. See Murray v. Schooner Charming Betsy, 6 U.S. (2 Cranch) 64, 118 (1804) ("an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains").

Enjoining defendants from setting a date for executing Mr. Hall using the Lethal Injection Protocol will ensure that condemned inmates are afforded all of their constitutional rights, that there is appropriate uniformity of justice between inmates on death row, and that international obligations of the United States are upheld. Because each of these grounds qualifies as a strong public interest, the third Wagner factor heavily weighs in favor of injunctive relief.

D.    Success on the Merits of the Underlying Action Is Likely

The final factor – the likelihood of success on the merits – also weighs in favor of injunctive relief. See Wagner, 836 F.2d at 575. Because Mr. Hall makes a strong showing on the first three factors, Mr. Hall need only show a "substantial case on the merits", rather than a

- 9 -

"probability of success on the merits." Role Models America, Inc. v. White, 193 F.Supp. 2d 76, 80 (D.D.C. 2002) (quoting WMATC v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)), rev'd on other grounds, 317 F.3d 327 (D.C. Cir. 2003). Mr. Hall has a substantial case on the merits. Just like the existing plaintiffs, Mr. Hall alleges that the Lethal Injection Protocol violates his rights under the Fifth and Eighth Amendments of the U.S. Constitution and the APA. Compare Hall Compl., ¶¶ 56-72 with Am. Compl., ¶¶ 50-70 & Webster Compl. ¶¶ 56-77. The claims of Mr. Hall therefore stand the same chance of success as those of the existing plaintiffs, who have received preliminary injunctive relief.

As shown by existing plaintiffs, these claims make out a substantial case on the merits. See Memo. in Suppt. of Mot. of Bruce Webster for Prelim. Inj., Feb. 14, 2007, at pp. 5-9 (discussing evidence including expert declaration and favorable decisions of other courts based upon similar claims). Based upon those arguments, this Court found the merits of those claims sufficient to grant preliminary injunctive relief. See Order Granting Motion to Stay and Granting Motion for Preliminary Injunction, Feb. 20, 2006; Order Granting Motion of Bruce Webster for Preliminary Injunction, Feb. 21, 2007. Since then, decisions of courts and executive branch officials only underscore the strength of these claims on the merits. As described in Part II.C of this Memorandum, other cases in Ohio, Missouri, and North Carolina, as well as recent action by governors of several states, underscore the constitutional magnitude of Mr. Hall's claims. See Cooey v. Taft, 2006 U.S. Dist. LEXIS 92521, *14 (S.D. Oh. Dec. 21, 2006) (prior to discovery in litigation over a secret lethal injection protocol, evidence from challenges to other lethal injection protocols arguably is the best evidence in support of a preliminary injunction). For these reasons, the Court should find the claims raised by Mr. Hall a sufficient basis for granting the preliminary injunctive relief.

### III.     CONCLUSION

The Court should grant Mr. Hall's unopposed request for a preliminary injunction barring defendants from setting an execution date for Mr. Hall and from executing Mr. Hall until the Court has reviewed the legality of the Lethal Injection Protocol.  All factors easily weigh in favor of a preliminary injunction and the weight of the first factor – risk of irreparable injury – is overwhelming.

Dated:  April 26, 2007

Respectfully submitted,

s/ Mark J. Hulkower

MARK J.  HULKOWER (D.C. Bar No. 400463)
OWEN BONHEIMER (D.C. Bar No. 484984)*
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
(202) 429-3000

ROBERT C. OWEN
Texas Bar No. 15371950
Owen & Rountree, LLP
P.O. Box 40428
Austin, Texas  78704
(512) 804-2661

MARCIA A. WIDDER
Louisiana Bar No. 23367
636 Baronne St.
New Orleans, LA  70113
(504) 558-9867

Counsel for Plaintiff Orlando Hall

*Pending application for admission to this Court

- 11 -

Proposed Order

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAMES H. ROANE, JR., et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| **v.** ) | **Case No. 1:05-CV-2337 (RWR)** |
| ) | |
| **ALBERTO GONZALES, et al.,** ) | |
| **Defendants.** ) | |
| ) | |

**ORDER**

IT IS ORDERED that Plaintiff Orlando Hall's Unopposed Motion for a Preliminary

Injunction Barring Defendants from Setting an Execution Date for Plaintiff and from Executing

Him is hereby GRANTED.  The Defendants herein are enjoined from setting a date for executing

Orlando Hall and from executing Orlando Hall, pending further order of this Court.

_____
Richard W. Roberts
United States District Judge