H

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES ROANE, JR., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| ANTHONY BATTLE, ORLANDO HALL, ) | |
| BRUCE WEBSTER, ) | |
| ) | |
| Plaintiff-Intervenors, ) | Civil Action No. 05-2337 (RWR) |
| ) | |
| v. ) | |
| ) | |
| ALBERTO GONZALES, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION TO LIFT THE STAY OF THE PLAINTIFFS' EXECUTIONS**

Defendants respectfully move the Court, pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiffs' and Intervenor-Plaintiffs' claims in this action. Defendants also move for an order lifting the stays of execution for Plaintiffs and Plaintiff-Intervenors. Each of the Plaintiffs and Plaintiff-Intervenors has been incarcerated under a sentence of death for more than ten years. Nonetheless, despite their numerous appeals conducted over many years, Plaintiffs and Plaintiff-Intervenors waited until the setting of their execution dates were imminent to file or intervene in this lawsuit and seek a stay of their execution dates. Plaintiffs and Plaintiff-Intervenors' delay in bringing these claims requires the dismissal of this lawsuit. First, this lawsuit must be dismissed on equitable grounds, as an "eleventh-hour" challenge to their imminent executions, ultimately coming "too late in the day." Hill v. McDonough, 126 S.Ct. 2096, 2104 (2006). Second, this lawsuit must be dismissed

because it is barred by the applicable statute of limitations.

In connection with Local Civil Rule 7(m), the undersigned counsel of record discussed the relief requested in the motion to lift the stays of execution with counsel for Plaintiffs and Intervenors. We understand they oppose that motion. A memorandum of points and authorities and proposed order are included with this Motion.

Respectfully submitted,

s/Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
Interim United States Attorney

s/Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

s/Peter S. Smith
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

s/Robert J. Erickson
ROBERT J. ERICKSON, D.C. Bar No. 220731
Principal Deputy Chief
Criminal Appellate Section
U. S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Room 1515
Washington, DC 20530
(202) 514-2841

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

)
JAMES ROANE, JR., et al.,                )
                                         )
            Plaintiffs,                  )
                                         )
ANTHONY BATTLE, ORLANDO HALL,            )
BRUCE WEBSTER,                           )
                                         )
            Plaintiff-Intervenors,       )       Civil Action No. 05-2337 (RWR)
                                         )
      v.                                 )
                                         )
ALBERTO GONZALES, et al.,                )
                                         )
            Defendants.                  )
_____  )

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AND
MOTION TO LIFT THE STAY OF PLAINTIFFS' EXECUTIONS**

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

        A.      Plaintiffs' Amended Complaint.

        Plaintiffs James Roane, Richard Tipton and Cory Johnson have been sentenced to death

under Federal law. See Amended Complaint ("Am. Comp.") at ¶ 2. Currently, Federal death

sentences are carried out through lethal injection and the process involves the intravenous

administration of three substances ("lethal injection protocol"): Sodium Pentothal, Pancuronium

Bromide and Potassium Chloride. See id. at ¶ 23. Plaintiffs claim that the Federal government's

use of these substances in its lethal injection protocol violates the Eighth Amendment of the

Constitution, the Administrative Procedure Act ("APA") and the Controlled Substances Act. See

Am. Comp. at ¶¶ 1-7.

        The Amended Complaint contains five counts, summarized as follows:

Count I (Fifth Amendment, Due Process): Claiming that defendants' alleged failure to disclose the procedure that will be used in carrying out their executions violates plaintiffs' due process rights. See Am. Comp. at ¶¶ 56-58.

Count II (Eighth Amendment, Cruel and Unusual Punishment): Claiming that the lethal injection procedure utilized in federal judicial executions creates an unreasonable risk of excruciating and unnecessary pain. See Am. Comp. at ¶¶ 59-61.

Count III (Eighth Amendment, Deliberate Indifference): Claiming that the means by which the plaintiffs will be anesthetized prior to their deaths violates their Eighth Amendment right to be free from deliberate indifference to serious medical needs. See Am. Comp. at ¶¶ 62-66.

Count IV(Administrative Procedure Act): Claiming that the manner in which defendants developed the protocol for conducting federal judicial executions violated the Administrative Procedure Act, requiring the action to be set aside. This Count also challenges the federal regulation authorizing lethal injection as a means of carrying out death penalty sentences. See Am. Comp. at ¶¶ 67-72.

Count V (Controlled Substances Act): Claiming that defendants have arbitrarily and capriciously failed to exercise enforcement authority under the Controlled Substances Act, based upon the fact that at least one of the chemicals used in carrying out federal judicial executions is a Schedule III controlled substance. See Am. Comp. at ¶ 73-77.

As discussed in more detail below, Plaintiff-Intervenors raise the same claims as the original Plaintiffs in this case.

B. Factual and Procedural History.

1. Plaintiffs Roane, Tipton and Johnson.

In February 1993, James Roane, Cory Johnson, and Richard Tipton were convicted in the Eastern District of Virginia, Am. Compl. at ¶ 22, for an array of criminal activity, including multiple capital murders, arising out of drug-trafficking operations in and near Richmond, Virginia. United States v. Roane et al., 378 F.3d 382, 389 (4th Cir. 2004), cert. denied, 126 S.Ct. 330 (2005). Each received at least one death sentence for his crimes, plus various terms of

imprisonment.  Id.  Plaintiffs appealed in United States v. Tipton, 90 F.3d 861 (4th Cir. 1996), including a challenge to the validity of the Department of Justice's regulations specifying lethal injection as the method for implementing Federal death sentences.  See 28 C.F.R. Part 26 (1993).  The Court of Appeals rejected Plaintiffs' challenge to the regulations, vacated the district court's stay of Plaintiffs' executions and remanded for the executions to proceed in accordance with the regulations.  378 F.3d at 390, 392.  Those regulations were effective February 18, 1993.  90 F.3d 861, 902 (4th Cir. 1996), cert. denied, 520 U.S. 1253 (1997).  Roane, Johnson, and Tipton sought relief in the district court pursuant to 28 U.S.C. § 2255.  Am. Compl. at ¶ 22; 378 F.3d at 390, 392.  In ensuing appeals from the denial of collateral relief, Plaintiffs raised approximately sixty discrete issues on appeal, but did not challenge the Federal government's lethal injection protocol.  378 F.3d at 390.

   2.  Plaintiff-Intervenors Webster and Hall.

  Bruce Webster and Orlando Hall ran a marihuana trafficking enterprise in Pine Bluff, Arkansas.  See United States v. Hall, 152 F.3d 381 (5th Cir. 1998).  In separate trials, they were convicted in 1995 (Hall) and 1996 (Webster) of kidnaping resulting in death and other crimes for their roles "in the shocking and exceedingly brutal kidnaping, rape and murder of sixteen-year-old Lisa Rene."  United States v. Webster, 421 F.3d 308, 309 (5th Cir. 2005).  See also Webster Compl. at ¶ 20; Hall Compl. at ¶ 21.  Webster's conviction and death sentence were affirmed on direct appeal.  United States v. Webster, 162 F.3d 308 (5th Cir. 1998), cert. denied, 528 U.S. 829 (1999).  Webster sought Federal collateral relief pursuant to 28 U.S.C. § 2255 in 2000.  He was denied that relief in 2004.  United States v. Webster, 392 F.3d 787 (5th Cir. 2004).

The United States Court of Appeals for the Fifth Circuit affirmed Hall's conviction on August 28, 1998. United States v. Hall, 152 F.3d 381 (5th Cir. 1998), cert. denied, 526 U.S. 1117 (1999). On May 16, 2000, Hall instituted a proceeding to vacate his conviction and death sentence under 28 U.S.C. § 2255. Hall Compl. at ¶ 21. That motion was denied on August 24, 2004. Hall v. United States, 2004 WL 1908242 (N.D. Tex. Aug. 24, 2004). The United States Court of Appeals for the Fifth Circuit affirmed that decision on July 5, 2006. Hall v. United States, 455 F.3d 508 (5th Cir. 2006). The Fifth Circuit denied Hall's petition for rehearing en banc on September 1, 2006. Hall Compl. at ¶ 21. Hall filed a petition for certiorari review of that decision with the Supreme Court on November 30, 2006. Hall Compl. at ¶ 21. On April 16, 2007, the Supreme Court denied that petition. Hall Compl. at ¶ 21. Neither Webster nor Hall raised a challenge to the Federal government's lethal injection protocol in their various direct appeals and proceedings seeking collateral relief.

3.      Plaintiff-Intervenor Battle

Battle was convicted in 1997 in the United States District Court for the Northern District of Georgia for killing a Federal Correctional Officer, while already serving a life sentence. He was sentenced to death on March 12, 1997. Battle Compl. at ¶ 19. On July 15, 1999, his conviction was affirmed on direct appeal to the United States Court of Appeals for the Eleventh Circuit. Id. The United States Supreme Court denied certiorari on March 19, 2000. Id. Battle then filed a motion to vacate his conviction and death sentence under 28 U.S.C. § 2255 on October 1, 2001. Id. The United States District Court for the Northern District of Georgia denied that motion on April 30, 2003. Id. The United States Court of Appeals affirmed on August 10, 2006, and the United States Supreme Court denied certiorari on April 16, 2007. Id.

-4-

4. Procedural History of this Case.

Plaintiffs filed their original complaint in this case on December 6, 2005. See Document No. 1. On December 19, 2005, the government set execution dates for Plaintiffs during May, 2006. Am. Compl. at ¶ 22. In February 2006, they sought a preliminary injunction to stay their executions during the pendency of Hill v. McDonough, in which the Supreme Court reviewed whether a State prisoner's claim challenging the State's method of execution is properly brought as a civil rights action or may only be heard as a habeas action. See Document No. 2. Defendants did not oppose the stay pending the Hill decision, and the Court granted Plaintiffs' motion by order entered on February 27, 2006. See Document No. 5. Subsequently, the United States Supreme Court held that Hill's challenge to a State's method of implementing his death sentence could proceed as a civil action pursuant to 28 U.S.C. § 1983. Hill v. McDonough, 126 S.Ct. 2096, 2104 (2006).

The parties then submitted a status report for further proceedings in this case, proposing that Plaintiffs would file an amended complaint and that Defendants would have sixty days to answer the amended complaint. Document No. 6. On November 9, 2006, Defendants answered the Amended Complaint, Document No. 14 (answer), and moved to dismiss the case in part, Document No. 13, which is pending before the Court. In that motion, Defendants sought an order: 1) dismissing all individual capacity claims; 2) dismissing the official capacity claims against Defendants Tandy, Kendig and Webster; 3) dismissing Count IV to the extent that it challenges the promulgation of 28 C.F.R. § 26.3; and (4) dismissing Count V. Plaintiffs' Opposition to that motion explicitly states that Plaintiffs "do not oppose the motion to dismiss

the individual capacity claims against defendants." Opp. at note 1.[1]  We understand that the Plaintiff-Intervenors are not raising any individual-capacity claims in this case, as their motions to intervene state that they are raising the same claims as Plaintiffs.  Hall's Complaint makes clear that he is suing Defendants only in their official capacities.  Hall Compl. at ¶¶ 10-17.  To the extent that Webster and Battle's complaints refer to any individual-capacity claims, those claims should be stricken from their Complaints and/or dismissed.  See Battle Compl. at ¶¶ 8-14 (referring to individual capacity claims), Webster Compl. at ¶¶ 7 (referring to Bivens claims), 9-15.

The parties filed a Meet and Confer Statement on November 30, 2006.  Document No. 16 (specifying period of limited discovery, including setting limit of ten depositions and twenty-five interrogatories per side, consistent with the presumptive limits in the Federal Rules of Civil Procedure, and proposing schedule for the briefing of motion for summary judgment).  Subsequently, Bruce Webster moved to intervene.  Document No. 23.  Defendants did not oppose that motion and it was granted on February 14, 2007.  On February 14, 2007, Webster moved for a preliminary injunction staying his execution.  Document No. 26.  The Court granted that motion.  Document No. 27.  On April 26, 2007, Anthony Battle and Orlando Hall moved to intervene in this case.  Document Nos. 36, 38.  The Court granted those motions on June 4, 2007.

---

[1] Plaintiffs brought this lawsuit against Defendants Alberto Gonzales (Attorney General, Department of Justice), Karen Tandy (Administrator, Drug Enforcement Administration), Harley G. Lappin (Director, Federal Bureau of Prisons), Newton Kendig (Medical Director, Federal Bureau of Prisons), Mark Bezy (Warden, United States Penitentiary, Terre Haute); Thomas Webster (Clinical Director, United States Penitentiary, Terre Haute) and various John Doe Defendants.  The Amended Complaint purports to sue each of these defendants in both their official and individual capacities.  See Am. Comp. at ¶¶ 11-17.  However, as noted, Plaintiffs have abandoned any individual-capacity claims.

Despite the parties' representations in the Meet and Confer Statement, Plaintiffs seem to have only lately determined what discovery they will seek in this case. Without having conducted a single deposition, and some four months into the discovery period in this case, on April 27, 2007, Plaintiffs moved for the taking of "additional depositions," Document No. 37, beyond the limit of ten depositions established in the Court's initial scheduling order of December 6, 2006. Defendants opposed that motion on May 1, 2007. Document No. 42. The Magistrate Judge heard argument on the motion on May 2, 2007. See May 8, 2007 Minute Entry. Defendants' opposition argued that since Plaintiffs have yet to conduct any depositions in this case, the Magistrate Judge should deny Plaintiffs' motion without prejudice so that Plaintiffs could take the ten depositions they are permitted under the Court's scheduling order and, if necessary, could seek additional depositions at a later date. The Magistrate Judge ruled on the issue concerning the deposition limits in a May 2, 2007 Minute Entry, allowing the Plaintiffs to conduct 84 hours of depositions, without any limit on the number of witnesses or depositions. Defendants objected to that ruling. Document No. 46. Those objections remain pending before the Court.

On May 7, 2007, Plaintiffs filed an amended motion for extension of time to complete discovery and file dispositive motions.[2] Document No. 43. That same day, Plaintiffs served Defendants with a second set of discovery requests, with responses due by June 6, 2007, the day

_____

[2] The schedule in this case provides for the filing of motions for summary judgment on the merits of the Constitutionality of the Federal government's lethal injection procedures. Defendants had anticipated filing an omnibus motion upon the close of discovery according to the Court's December 6, 2006 scheduling order. However, for the reasons set forth in this Motion, Defendants believe that the filing of a dispositive motion now addressing threshold issues, in connection with a stay of discovery, is the most efficient way for this case to proceed.

before all discovery was to close in this case. Plaintiffs also served Defendants with a second request for entry upon land in order to re-inspect the Federal government's execution facility in Terre Haute, Indiana, which is both cumulative and burdensome.[3]

Plaintiffs have yet to notice any depositions in this case. In addition, at the end of April, 2007, with the discovery deadline looming, Plaintiffs informed Defendants that they would videotape the depositions, including the depositions of those who conduct the Federal government's executions and whose identities and identifying information are protected by court order in this case. Defendants had no choice but to move for a protective order barring Plaintiffs from videotaping depositions in this case, including of the anonymous witnesses who perform the Federal government's executions, or developed the lethal injection protocols, and from requiring those deponents to perform technical demonstrations during the depositions. Document No. 47. The Magistrate Judge scheduled a June 8, 2007 hearing to address these issues. May 22, 2007 Minute Entry. On June 4, 2007, the Court granted in part Plaintiffs' amended motion to extend the discovery period.

In a separate motion, Defendants moved for a stay of discovery in this case due to the pendency of this Motion. A stay of the conduct of discovery is warranted to allow the Court to address this motion, prior to, inter alia, the Court's expenditure of additional time and resources in resolving the pending discovery disputes. As of the date of the filing of this Motion, Magistrate Judge Robinson already has held two hearings on contested discovery issues and scheduled another. Thus, it is in the parties' and the Court's interest, in conserving time and

---

[3] Plaintiffs previously inspected the Federal government's execution facility on March 10, 2007.

resources, to stay those disputes pending resolution of the dispositive motion.

## II.  ARGUMENT

### A.  Legal Standards.

The standard applied to Defendant's motion for judgment on the pleadings is the same as that under a Rule 12(b) motion to dismiss.  Dale v. Executive Office of the President, 164 F.Supp.2d 22, 24 (D.D.C. 2001); Longwood Vill. Rest. v. Ashcroft, 157 F. Supp.2d 61, 66-67 (D.D.C. 2001).  A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) may be granted if it is beyond doubt that a plaintiff can demonstrate no set of facts that supports her claim for relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000).  The Court is to treat the complaint's factual allegations as true, see Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993), and must grant Plaintiff "the benefit of all inferences that can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979).  However, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions.  National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communication Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

### B.  Plaintiffs' Eleventh Hour Challenge to the Federal Government's Method of Execution is Barred.

The United States Supreme Court observed in Hill v. McDonough, that "a number of federal courts have invoked their equitable powers to dismiss suits they saw as speculative or filed too late in the day."  126 S.Ct. 2096, 2104 (2006) (citing, inter alia, Hicks v. Taft, 431 F.3d

916 (6th Cir. 2005) and White v. Johnson, 429 F.3d 572 (5th Cir. 2005)).  For example, in

Workman v. Bredesen, 2007 WL 1311330 (6th Cir., May 7, 2007), the United States Court of

Appeals for the Sixth Circuit held that the plaintiff had raised his challenge to his method of

execution, lethal injection, "too late in the day."  Workman, supra at *13 (citing Hill v.

McDonough, 126 S.Ct. at 2104).  See also Harris v. Johnson, 376 F.3d 414, 417 (5th Cir. 2004)

("The brief window of time between the denial of certiorari and the state's chosen execution date

– in this case, four months – is an insufficient period in which to serve a complaint, conduct

discovery, depose experts, and litigate the issue on the merits.").

In fact, the Supreme Court has indicated that in considering the equitable remedy of

staying an execution, "a district court *must* consider ... the extent to which the inmate has delayed

unnecessarily in bringing the claim."  Nelson v. Campbell, 541 U.S. 637, 649-50 (2004)

(emphasis added).  There is "a strong equitable presumption against the grant of a stay where a

claim could have been brought at such a time as to allow consideration of the merits without

requiring entry of a stay."  Id. at 650.  This same reasoning should obtain when, as here, Plaintiffs

unnecessarily delay pressing their claims once they have initiated a lawsuit.  Claims that should

have been resolved on motions for summary judgment filed this summer instead have been

delayed significantly by, inter alia, Plaintiffs' expansion of discovery beyond what was initially

contemplated and memorialized in the parties' LCvR 16.3 Report.

In contravention of the United States Supreme Court's warnings, Plaintiffs and Plaintiff-

Intervenors waited until the setting of their execution dates were imminent to raise the claims in

this lawsuit.  As explained above, Plaintiffs were sentenced to death in 1993.  Webster and Hall

were sentenced in 1995 and Battle was sentenced to death in 1997.  In 1993, the Federal

government promulgated a regulation specifying that its executions would be carried out by lethal injection.  28 C.F.R. § 26.3; Am. Compl. at ¶ 29.  Notably, each of the complaints in this case discusses the 1993 regulation.  In addition, each of the complaints in this case cites examples of alleged problems in executions by lethal injection conducted by the States going back to the 1970s and 1980s.  Battle Compl. at ¶¶ 40 (alleging failure of IV lines in state executions by lethal injection), 41 (alleging problems with access to inmate's veins during execution by lethal injection); Hall Compl. at ¶ 43 (referring to Webster's Complaint); Webster Compl. at ¶ 41 (alleging failure of equipment in executions by lethal injection dating back to 1977); Am. Compl. at ¶ 45 (same).  One wonders, then, why Plaintiffs failed to raise their claims concerning the Federal government's lethal injection protocol before this time.  Moreover, the Court can take judicial notice of the Federal execution of Timothy McVeigh, which was conducted in 2001 by lethal injection, and was highly publicized.[4]  The media coverage of the McVeigh execution specifically noted the use of the three-chemical protocol Plaintiffs challenge in this case.  Id.  Moreover, during that time period, challenges to State lethal injection protocols were going forward.  See, e.g., Sims v. State, 754 So.2d 657, 668 (Fla. 2000); State v. Webb, 252 Conn. 128, 750 A.2d 448, 453-57 (Conn. 2000).

Plaintiffs' Amended Complaint makes clear that they filed their complaint approximately two weeks before their execution dates were set.  Am. Compl. at ¶ 22.  Plaintiff-Intervenor Webster actually had an execution date scheduled when he intervened in this lawsuit.  Webster Compl. at ¶ 20 (execution scheduled for April 16, 2007).  Hall and Battle moved to intervene shortly before their execution dates would have been scheduled.  As in the Workman case,

_____

[4] See  http://archives.cnn.com/2001/LAW/06/11/mcveigh.02.index.html.

-11-

Plaintiffs and Intervenor-Plaintiffs had opportunities to avoid the situation in which the only way to litigate the validity of the Federal government's execution protocol would be to stay their executions. In fact, as previously explained, Plaintiffs raised an earlier challenge to the Federal government's lethal injection regulations in district court and later unsuccessfully litigated that issue on appeal. As the United States Court of Appeals for the Fifth Circuit ruled in <u>Neville v. Johnson</u>, 440 F.3d 221, 222 (5th Cir. 2006): "A challenge to a method of execution may be filed at any time after the plaintiff's conviction has become final on direct review." For the Plaintiffs, that was in 1997. 520 U.S. 1253 (1997); Am. Compl. at ¶ 22. For Webster and Hall, that was in 1999. <u>United States v. Hall</u>, 526 U.S. 1117 (1999); <u>United States v. Webster</u>, 528 U.S. 829 (1999). For Battle, that was during 2000. Battle Compl. at ¶ 19.

Thus, this is the kind of "dilatory" suit from which "federal courts can and should protect" the government, which has a strong interest in carrying out Plaintiffs' and Plaintiff-Intervenors' judicial sentences. <u>Hill</u>, 126 S.Ct. at 2104.[5] <u>See also</u> <u>Jones v. Allen</u>, 485 F.3d 635, 2007 WL 1225393 at *3 n.3, <u>cert. denied</u>, 127 S.Ct. 2160 (May 3, 2007) (noting that delay in filing lethal-injection challenge could not be justified on ground that inmate knew little about the

---

[5] Plaintiffs' conduct in discovery in this case adds support to the government's position. As explained previously, Plaintiffs seem only lately to have determined what discovery they will seek. For example, they took the position that they could not even begin depositions until the question of the ultimate number they would be permitted was resolved; they raised their intent to videotape the depositions only the week before the scheduled start of the depositions; they allowed their expert deadline to lapse upon the expectation that the Court would allow them more time to complete discovery; and they served additional discovery requests upon Defendants for which the responses would be due at the very close of discovery, including a cumulative and burdensome request to re-inspect the Terre Haute, Indiana execution facility after already having inspected that facility on March 10, 2007. In <u>Walker v. Johnson</u>, 2006 WL 2619857 (E.D. Va. 2006), the district court did not allow any inspection whatsoever, let alone two inspections of the execution facility.

procedure because the thrust of the challenge went to the impermissibility of the same three-chemical procedure that most States use).  Plaintiffs, and Plaintiff-Intervenors, all of whom are inmates sentenced to death, have an obvious and strong motive to delay the implementation of their Federal judicial sentences.

The Hill case is instructive.  "On November 29, 2005, the Governor of Florida signed Hill's death warrant, which ordered him to be executed on January 24, 2006 . . . . Hill then challenged, for the first time, the State's lethal injection procedure."  Hill, 126 S.Ct. at 2100.  Hill brought his case as a civil action pursuant to 42 U.S.C. § 1983.  The United States Supreme Court ruled that Hill's Section 1983 action was not barred by § 2244(b)'s prohibition on successive habeas petitions.  Id. at 2099, 2100.  The Supreme Court held that Hill's civil action could proceed and remanded the case.  Id. at 2100.  In so doing, the Court observed that the federal courts "can and should protect states from dilatory or speculative suits," and noted that the "equities and the merits of Hill's underlying action are also not before us."  Hill, 126 S.Ct. at 2104.  In keeping with that admonition, upon remand the district court dismissed Hill's civil action as having been "delayed unnecessarily" and raising for the first time "his concerns with regard to the formulation and adoption of Florida's lethal injection procedures."  Hill v. McDonough, 2006 WL 2556938 at *2-3 (N.D. Fla., Sept. 1, 2006).  The United States Court of Appeals for the Eleventh Circuit affirmed, explaining that over the years, Hill "has pursued various unsuccessful appeals and collateral proceedings seeking to have his conviction and death sentence overturned," without raising a challenge to Florida's lethal injection procedures until an execution date had been set.  464 F.3d 1256, 1257 (11th Cir. 2006) (per curiam), cert. denied, 127 S.Ct. 465 (2006).  See also Hill v. McDonough, 127 S.Ct. 34 (2006) (stay of execution denied).

The Court held that "in light of this context [other pending challenges to lethal injection], Hill cannot claim that it was impossible for him to initiate his federal suit any earlier." Id. at 1258.

Similarly, in Harris v. Johnson, 376 F.3d 414, 418 (5th Cir. 2004), the Fifth Circuit observed that by "waiting as long as he did, Harris leaves little doubt that the real purpose behind his claim is to seek a delay of his execution . . . ." That court also observed in White v. Johnson, that "White has been on death row for more than six years, and only now, with his execution imminent, has decided to challenge a procedure for lethal injection that the State has been using for his entire stay on death row . . . . White has no excuse for delaying his claim until the eleventh hour, and he cannot argue that he was unaware of the state's intention to execute him by injecting the three chemicals he now challenges." 429 F.3d at 574 (internal quotations and citations omitted). The Fifth Circuit expressly held that waiting until an execution date is set, as Webster has done, is too long. "As we read Hill, a plaintiff cannot wait until a stay must be granted to enable him to develop facts and take the case to trial–not when there is no satisfactory explanation for the delay." Reese v. Livingston, 453 F.3d 289, 291 (5th Cir. 2006). Likewise, Hall and Battle only recently intervened in this case, despite its pendency since December, 2005.

C.     Plaintiffs' Claims Are Barred by the Applicable Statute of Limitations.

Since Plaintiffs and Plaintiff-Intervenors have abandoned any claims against Defendants in their individual capacities, their claims are subject to the general six-year statute of limitations on lawsuits against the Federal government. The jury in the Eastern District of Virginia sentenced Roane, Tipton and Johnson to death in 1993. See Am. Comp. at ¶ 22. Plaintiff-Intervenors were sentenced in 1996 and 1997. Plaintiffs cannot claim that they were unaware that they would be executed by lethal injection. The final rule authorizing lethal injection as the

means of carrying out Federal death sentences was promulgated in 1993. See 58 Fed. Reg. 4898, 4901 (1993), codified at 28 C.F.R. § 26.3 ( "Except to the extent a court orders otherwise, a sentence of death shall be executed . . . [b]y intravenous injection of a lethal substance or substances in a quantity sufficient to cause death."). Plaintiffs challenged the regulation in district court and unsuccessfully litigated that challenge on direct review. See United States v. Tipton, 90 F.3d 861, 867-69 (4th Cir. 1996), 520 U.S. 1253 (1997).

Each of the Plaintiffs and Plaintiff-Intervenors refer to the Department of Justice lethal injection regulations in their complaints. Am. Compl. at ¶ 29; Battle Compl. at ¶ 26; Hall Compl. at ¶ 43; Webster Compl. at ¶ 41. Unless a specific statutory provision controls, lawsuits against the Federal government are subject to a six-year statute of limitations. See 28 U.S.C. § 2401 ("Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues").

The claims advanced in this lawsuit accrued no later than the exhaustion of Plaintiffs' and Plaintiff-Intervenors' direct appeals. Anthony Battle was the last inmate in this case to exhaust his direct appeal, in 2000, more than six years before he intervened in this litigation in 2007. Battle Compl. at ¶ 19 (Battle's direct appeals ended in 2000). See Neville v. Johnson, 440 F.3d 221, 222 (5th Cir. 2006) ("A challenge to a method of execution may be filed at any time after the plaintiff's conviction has become final on direct review."). Plaintiffs filed this lawsuit in December, 2005. Document No. 1. Their direct appeals had been exhausted in 1997, eight years earlier. Plaintiff-Intervenors Webster and Hall moved to intervene in 2007, more than six years after their direct appeals had been exhausted in 1999.

Moreover, as explained in Defendants' motion for partial dismissal, Plaintiffs Roane,

-15-

Tipton and Johnson pursued a challenge to 28 C.F.R. § 26.3, the Federal regulations concerning lethal injection, in an earlier action. See Tipton, 90 F.3d at 901-03. Thus, Plaintiffs' and Plaintiff-Intervenors' challenge to the Federal government's lethal injection protocol "runs afoul" of the six-year statute of limitations on actions against the Federal government because their claims accrued more than six years before Plaintiffs filed their Complaint in December, 2005 and Plaintiff-Intervenors moved to intervene in 2007.

Plaintiffs and Plaintiff-Intervenors were under a sentence of death, and the Federal government had promulgated its Final Rule specifying lethal injection as the means of their execution, substantially more than six years before the filing of this lawsuit. The regulation provides that "a sentence of death shall be executed . . . by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director of the Federal Bureau of Prisons and to be administered by qualified personnel selected by the Warden and acting at the direction of the Marshal." 28 C.F.R. § 26.3(a)(4). As previously noted, Plaintiffs in fact did challenge the regulation. They failed at that time to raise these claims. Similarly, each of the Plaintiff-Intervenors refer to 28 C.F.R. § 26.3 in their complaints and they failed to raise these claims timely. See, e.g., Battle Compl. at ¶ 26; Hall Compl. at ¶ 28; Webster Compl. at ¶ 27.

D. The Court Should Lift the Stay of Executions.[6]

In Hill v. McDonough, the Supreme Court observed that filing "an action that can proceed under § 1983 does not entitle the complainant to an order staying the execution as a matter of course. Both the state and the victims of crime have an important interest in the timely enforcement of a sentence." Hill, 126 S.Ct. at 2104 (citing Calderon v. Thompson, 523 U.S. 538, 556 (1998)). A stay of execution is warranted only when an inmate satisfies "all of the requirements for a stay, including a showing of a significant possibility of success on the merits." Id. (citing Barefoot v. Estelle, 463 U.S. 880, 895-96 (1983) and Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (preliminary injunction not granted unless the movant, by a clear showing, carries the burden of persuasion)). The Hill Court also observed that a "court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" Id. (quoting Nelson, supra, at 650). See also Gomez v. United States Dist. Ct. for the N. Dist. of Cal., 503 U.S. 653, 654 (1992) (per curiam) (noting that the "last-minute nature of an application" or an applicant's "attempt at manipulation" of the judicial process may be grounds for denial of a stay).

Courts consider and weigh four factors before granting a preliminary injunction: (1) substantial likelihood of success on the merits; (2) a showing of irreparable harm in the absence

---

[6] There is no discrete docket entry or order staying the executions of Plaintiff-Intervenors Battle and Hall. Nonetheless, in an abundance of caution, Defendants are moving the Court to lift the stay as to all the inmates. In the alternative, the Court should not enter stays for Battle and Hall in the first instance. Consistent with Workman, Battle and Hall must attempt to litigate their claims without a stay prior to any execution date. Currently, neither Battle nor Hall has received notice of an execution date.

of an injunction; (3) that the injunction would not substantially harm other parties; and (4) that the injunction would not substantially harm the public interest. Taylor v. Resolution Trust Corp., 56 F.3d 1497, 1505-06 (D.C. Cir. 1995); Wagner v. Taylor, 836 F.2d 566, 575 (D.C. Cir. 1987). A district court must balance the strength of the moving party's arguments in each of the required areas. CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995). The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held." University of Texas v. Camenisch, 451 U.S. 390, 395 (1981). The "power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised." Dorfmann v. Boozer, 414 F.2d 1168, 1173 (D.C. Cir. 1969).

First, Plaintiffs have little likelihood of success on the merits. "The Supreme Court has never invalidated a State's chosen method of execution. No court has invalidated the three-drug protocol used by Tennessee (and 29 other jurisdictions)." Workman v. Bredesen, supra at *8. Other courts considering the constitutionality of various lethal injection protocols employed in the administration of state executions have rejected Eighth Amendment challenges predicated on the claim that the protocols used by those states constitute cruel and unusual punishment. See, e.g., Taylor v. Crawford, 2007 WL 1583874 (8th Cir., June 4, 2007); Beardslee v. Woodford, 395 F.3d 1064, 1075 (9th Cir. 2005); Cooper v. Rimmer, 379 F.3d 1029, 1033 (9th Cir. 2004); Walker v. Johnson, 2006 WL 2619857 (E.D. Va. 2006); Crowe v. Head, 426 F. Supp.2d 1310, 1353 (N.D. Ga. 2005); see also Abdur'Rahman v. Bredesen, 181 S.W.3d 292 (Tenn. 2005); State v. Webb, 750 A.2d 448 (Conn. 2000); Sims v. State, 754 So.2d 657 (Fla. 2000).

None of the examples of alleged problems with lethal injection protocols that Plaintiffs provide in their Amended Complaint concerns the Federal government's past executions by

-18-

lethal injection. Am. Compl. at ¶¶ 40-41. The United States Court of Appeals for the Sixth Circuit in Workman recognized that the State defendant in that case, Tennessee, had decided to retain the three-chemical protocol it had adopted in 1998, a protocol that 29 other jurisdictions, including the Federal government, employ. Workman, supra at *4, *9. Tennessee's protocol, like the Federal government's, involves the injection of 5 grams of sodium thiopental followed by 100 milligrams of pancuronium bromide (Pavulon) followed by 200 millequivalents of potassium chloride, all delivered intravenously. Id. at *4. See also Am. Compl. at ¶ 23, Hall Compl. at ¶ 32, Webster Compl. at ¶ 31, Battle Compl. at ¶ 20 (specifying chemicals used in Federal executions, which are the same three chemical substances used by Tennessee and addressed in Workman). The Workman panel also found that the "dose of sodium thiopental, a barbiturate that 'reduces oxygen flow to the brain and causes respiratory depression,' quickly anesthetizes the inmate and is sufficient to cause death in the absence of the two additional chemicals" in Tennessee's lethal injection protocol. Workman, supra at *4 (citing Tennessee "Procedures for Lethal Injection"). See also Taylor v. Crawford, 2007 WL 1583874 (8th Cir., June 4, 2007) (same). Pancuronium bromide is a "muscle paralytic" that "assist[s] in the suppression of breathing and ensure[s] death." Id. See also Workman, supra at *11-*12. Potassium chloride, a salt, interferes with heart function, causing "cardiac arrest and rapid death." Id. See also Taylor v. Crawford, 2007 WL 1583874 (8th Cir., June 4, 2007); Workman, supra at *11-*12.

Second, the Supreme Court has never invalidated a State's (or the Federal government's) chosen method of execution. Workman, supra at *8 (citing, inter alia, Wilkerson v. Utah, 99 U.S. 130, 134-35 (1878) (holding that the use of a firing squad was not cruel and unusual); In re

Kemmler, 136 U.S. 436, 446-49 (1890) (declining to apply the Eighth Amendment to the States); State of La. ex rel. Francis v. Resweber, 329 U.S. 459, 464 (1947) (plurality) ("We cannot agree that the hardship imposed upon the petitioner rises to that level of hardship denounced as denial of due process because of cruelty.")). The Supreme Court has had opportunities to constrain methods of execution and has not done so. Id. (citing, inter alia, Gomez v. U.S. Dist. Court for the N. Dist. of Cal., 503 U.S. 653, 657-58, (1992) (Stevens, J., dissenting from vacation of stay of execution) (gas chamber)).

Third, other courts have rejected challenges to lethal injection protocols using the same three-chemicals used by the Federal government. See, e.g., Abdur'Rahman, 181 S.W.3d at 297-98; Aldrich v. Johnson, 388 F.3d 159, 161 (5th Cir. 2004) (lethal injection in Texas); People v. Snow, 30 Cal.4th 43, 132 Cal. Rptr.2d 271, 65 P.3d 749, 800-01 (Cal. 2003); Sims v. State, 754 So.2d 657, 668 (Fla. 2000); State v. Webb, 252 Conn. 128, 750 A.2d 448, 453-57 (Conn. 2000); LaGrand v. Stewart, 133 F.3d 1253, 1265 (9th Cir. 1998) (lethal injection in Arizona). This is the first case of this sort brought against the Federal government. Given this body of law, and the fact that there have been no decisions on the Federal government's lethal injection protocol, Plaintiffs cannot credibly establish a likelihood of success in attacking the Federal government's lethal injection protocol when that same theory has been rejected as against the States. The Federal government's executions have been conducted without incident. See, e.g., http://archives.cnn.com/2001/LAW/06/11/mcveigh.02.index.html.

Fourth, one of the benchmarks the Supreme Court uses to identify Eighth Amendment violations, whether the governmental entity has considered the "evolving standards of decency that mark the progress of a maturing society," McCleskey v. Kemp, 481 U.S. 279, 300 (1987)

(internal quotation marks omitted), supports the government's position. The 1993 regulations reflect a shift from alternatives such as hanging and the gas chamber. As the Workman court found, "the method of execution in 37 of the 38 States that authorize capital sentences has evolved to lethal injection . . . . The Federal Government now uses lethal injection as well." Workman, supra at *9. There is a consensus among the States and the Federal Government that lethal injection is the most humane method of execution. Id.

Finally, the public interest prong of the test for an injunction supports the government's request to lift the stay. "A State's interests in finality are compelling when a federal court of appeals issues a mandate denying federal habeas relief." Calderon v. Thompson, 523 U.S. 538, 556 (1998). Certainly, long before now, when Plaintiffs and Plaintiff-Intervenors exhausted their direct appeals, the government's interest in finality acquired "an added moral dimension. Only with real finality can the victims of crime move forward . . . ." Calderon, 523 U.S. at 556. At some point in time, the government has a right to impose a sentence, not just because the "State's interests in finality are compelling," but also because there is a "powerful and legitimate interest in punishing the guilty," which attaches to "the State and the victims of crime alike." Calderon, 523 U.S. at 556 (internal quotation marks omitted). Plaintiffs were sentenced in 1993. Am. Compl. at ¶ 22. Webster and Hall were sentenced in 1995 and Battle was sentenced on March 12, 1997. Battle Compl. at ¶ 19. More than ten years after the imposition of each of the inmates' sentences, they have had sufficient opportunities to pursue their claims.

## CONCLUSION

WHEREFORE, Defendants request that the Court lift its stay on the executions of

Plaintiffs and Plaintiff-Intervenors and dismiss this lawsuit with prejudice.  A proposed order is

included.

Respectfully submitted,

s/Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
Interim United States Attorney

s/Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

s/Peter S. Smith
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

s/Robert J. Erickson
ROBERT J. ERICKSON, D.C. Bar No. 220731
Principal Deputy Chief
Criminal Appellate Section
U. S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Room 1515
Washington, DC 20530
(202) 514-2841

-22-